## Wei Jia *vs.* Board of Bar Examiners.

Suffolk. May 5, 1998. - July 9, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Attorney at Law,* Admission to practice, Educational requirements. *Board of Bar Examiners. Supreme Judicial Court,* Membership in the bar. *Constitutional Law,* Full faith and credit. *State Administrative Procedure Act.*

The appropriate standard of review of a decision of the Board of Bar Examiners is de novo review by this court. [782-783]

An applicant to sit for the Massachusetts bar examination did not demonstrate that his legal education was the equivalent of a juris doctor degree obtained from a law school approved by the American Bar Association as required by the provisions of S.J.C. Rule 3:01, § 3.4, and thus was not eligible to take the bar examination. [783-788]

A single member of the Board of Bar Examiners acted properly pursuant to full and informed delegation of authority by the board in determining the eligibility of an applicant to take the bar examination. [788]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on October 17, 1997.

The case was reported by *Greaney,* J.

*Robert A. Stolzberg* for the petitioner.

*Edward J. Barshak* for the Board of Bar Examiners.

MARSHALL, J. In 1993, the Board of Bar Examiners (board) denied an application by the petitioner, Wei Jia, to sit for the Massachusetts bar examination because he had not been graduated with a bachelor of laws or juris doctor degree from a law school approved by the American Bar Association (ABA), as required by S.J.C. Rule 3:01, § 3.3, as appearing in 382 Mass. 753 (1981), nor had he demonstrated that he had obtained an "equivalent" legal education, as provided in S.J.C. Rule 3:01, § 3.4, as appearing in 382 Mass. 753 (1981).[1] The petitioner,

---

[1] "3.3 Law School. Each applicant shall have graduated with a degree of bachelor of laws or juris doctor from a law school which, at the time of graduation, is approved by the American Bar Association or is authorized by

the holder of a primary law degree from an institute in the People's Republic of China and two advanced law degrees from Tulane Law School (Tulane) in Louisiana, sought equitable relief in the Supreme Judicial Court for the county of Suffolk, compelling the board to permit him to sit for the Massachusetts bar examination, or, in the alternative, ordering the board to identify those legal courses he would be required to complete before he could sit for the examination. He also filed a motion for a preliminary injunction and a motion to expedite discovery. The board moved to dismiss the petition. After a hearing, a single justice denied the petitioner's motion for a preliminary injunction and the board's motion to dismiss. He permitted the petitioner to take limited discovery. In January, 1998, the petitioner and the board filed cross motions for summary judgment, and the case was reported to this court by the single justice "to decide whether summary judgment is appropriate, and, if so, for which party." We conclude that the petitioner is not entitled to the relief he seeks, and that summary judgment shall enter for the board.

1. *Facts.* The material facts are not in dispute and, if appropriate, summary judgment may enter as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). The petitioner graduated from the Northwest Institute of Political Science of Law in Xian, People's Republic of China, in 1989, receiving a certificate of graduation and a master of law degree in private international law.[2] He thereafter earned a master's degree of comparative law (M.C.L.) and a doctor of juridical science (S.J.D.) from Tulane, a law school accredited by the ABA. Admission to the M.C.L. program at Tulane is limited to

statute of the Commonwealth to grant the degree of bachelor of laws or juris doctor."

"3.4 Foreign Law Schools. Any applicant who received his legal education at a law school located outside of any State, district or territory of the United States shall have pre-legal education equivalent, in the Board's opinion, to that set forth in subsections 3.1 and 3.2 and legal education equivalent, in the Board's opinion, to that provided in law schools approved by the American Bar Association. Before permitting such an applicant to take the law examination, the Board in its discretion may, as a condition to such permission, require such applicant to take such further legal studies as the Board may designate at a law school approved by the American Bar Association."

[2]The record does not establish whether his law degree from the Northwest Institute of Political Science of Law was at the undergraduate or graduate level.

students who have received a juris doctor degree from a United States law school, or who have received a first (basic) law degree from a foreign law school approved by the committee on graduate admissions at Tulane. The M.C.L. degree requirements at Tulane include, inter alia, satisfactory completion of twenty-four semester hours of course work and, for graduates of foreign law schools, enrollment in "introduction to American law," a two-credit class lasting for three weeks, and "legal research and writing for international graduate students," a three-credit class offered in the fall semester. The S.J.D. program at Tulane is a two-year, full-time program.

In 1992, after receipt of his M.C.L. from Tulane, but prior to completion of his S.J.D. degree, the petitioner applied for admission to the bar of the State of Louisiana. He was admitted in October, 1992.[3] He thereafter applied for, and was admitted to, the bar of the State of New York in March, 1994.[4]

In October, 1993, the petitioner moved to Boston, and applied to take the Massachusetts bar examination. In December, 1993, the board informed the petitioner that his legal education did not comply with S.J.C. Rule 3:01, § 3.3, and did not appear to be equivalent to that provided in law schools approved by the ABA, as required by S.J.C. Rule 3:01, § 3.4. The board advised him that he would be required to receive a degree of juris doctor from a law school approved by the ABA before he could take the Massachusetts bar examination. The petitioner subsequently submitted additional information to the board for

[3]Because he received his primary law degree from a foreign law school, before he was permitted to sit for the Louisiana bar examination, the petitioner was required to obtain a "certificate of equivalency" by demonstrating to the Committee on Bar Admissions of the Louisiana State Bar Association that his legal education was "equivalent" to that of a graduate of a law school approved by the ABA. Art. 14, § 8(A), of the Articles of Incorporation of the Louisiana State Bar Association (1997). The Louisiana committee recommended that the petitioner be granted a certificate of equivalency on the sole ground that he had received his M.C.L. from Tulane.

[4]An applicant who has studied in a foreign country may qualify to take the New York State bar examination if, inter alia, he has "successfully completed a full-time or part-time program consisting of a minimum of *24 semester* hours of credit, or the equivalent, in professional law subjects in an approved law school in the United States." (Emphasis added.) N.Y. Rules of the Court of Appeals § 520.6(b)(2) (1997). The record does not establish on what basis the New York State Board of Law Examiners determined that the petitioner had provided satisfactory proof of the legal education required to qualify him to take the New York State bar examination.

its further consideration of his application, including a transcript from Tulane showing the courses that he had successfully completed,[5] letters from faculty members at Tulane confirming that he had audited, but had not received credit for, one course in torts, one course in civil procedure, and one course in criminal law, and evidence of his admission to the bars of Louisiana and New York. After reviewing the additional information the board again denied his application.[6]

2. *The petitioner's eligibility to take the bar examination.* General Laws c. 221, § 37, and S.J.C. Rule 3:01 delineate the procedures and requirements for admission to the bar in Massachusetts. The statute provides that the board shall ascertain the "acquirements and qualifications" of each applicant for admission. G. L. c. 221, § 37. If the board reports that an applicant is "of good moral character and sufficient acquirements and qualifications" and recommends his admission, the applicant shall be admitted "unless the court otherwise determines." *Id.* S.J.C. Rule 3:01, § 1.3, as appearing in 382 Mass. 753 (1981), provides that all petitions for admission to the bar of the Commonwealth shall be referred to the board for a report "as to the character, acquirements and qualifications" of each applicant. S.J.C. Rule 3:01, §§ 3.1 to 3.3, further describes the qualifications required of each applicant for admission by examination. Rule 3:01, § 3.4, delegates to the board the determination of the prelegal and legal equivalency qualifications of those applicants who receive their primary legal education at foreign law schools.

The board, in turn, has published policy guidelines that provide advice to applicants, including those from foreign

---

[5]A copy of the official transcript issued to the petitioner and provided to the board reflects that the petitioner successfully completed the following courses: introduction to American legal system and law; legal research and writing; contracts I; business enterprises I; European economic community; transnational litigation; financial institutions; international business transactions; international trade and finance; and "directed research." The record does not reflect any additional courses that he took for his S.J.D., for which he did complete a dissertation thesis, nor does the record reflect the subject of his thesis.

[6]In June, 1995, the chairman of the board informed the petitioner that he did not have "the equivalency to a common law school education. Among other factors, the auditing of the courses is not the equivalent of taking and passing such courses. The fact that other jurisdictions take a different view of the applicant's qualifications is of interest, but certainly not decisive."

countries, who apply to sit for the bar examination.[7] With respect to its implementation of S.J.C. Rule 3:01, § 3.4, and its assessment of the legal education equivalency of applicants who are graduates of foreign law schools,[8] the board distinguishes among (1) graduates from the "common-law faculties of Canadian law schools which are eligible to be members of the Law School Admissions Council": they are permitted to sit for the Massachusetts bar examination "on the same basis as graduates of law schools approved by" the ABA; (2) graduates of the "common-law faculties of law schools in foreign countries (other than Canada) whose jurisprudence rests upon the common-law tradition": they "may be" permitted to sit for the Massachusetts bar examination "upon successful completion of such academic legal study at an ABA-approved law school as the Board may require"; and (3) graduates of faculties of other foreign countries. As to the last, the board informs these graduates that acquisition of a master of law degree from a law school approved by the ABA "may be considered" by the board in determining equivalency, that the board "[g]enerally" will require applicants to take courses such as American constitutional law, Federal courts and jurisprudence, the Uniform Commercial Code, and the "core curricular courses offered in the first year at ABA-approved law schools," and that it "may require" acquisition of a juris doctor degree from a law school approved by the ABA. In evaluating an applicant's qualifications, the board may also consider "graduate legal studies other than those in Master of Law programs in ABA-approved law schools, admission to practice in other American jurisdictions, and length and nature of practice or teaching in an American jurisdiction."

The petitioner does not claim to meet the requirements of S.J.C. Rule 3:01, § 3.3, but maintains that he meets the equivalency requirements of S.J.C. Rule 3:01, § 3.4, and that

---

[7]Policy guidelines with respect to attorneys from foreign countries were first adopted by the board in January, 1995. "Important Information for Attorneys from Foreign Countries, Applying Under General Rule 3.01, Section 3," is reproduced in full in the Appendix.

[8]The term "graduates of foreign law schools" is used by the board to refer to graduates who have received a primary law degree from a foreign law school, and who have not received a juris doctor degree from a law school approved by the ABA even if such graduates have received additional legal degrees from ABA-approved law schools, such as a master of law or doctor of juridical science degree.

he is eligible to take the bar examination. He recognizes that we have delegated to the board in the first instance the duty to evaluate his legal education, and argues that the board failed to make a good faith evaluation of his qualifications and failed in his case to follow its own rules and practices. In the alternative, the petitioner says that we may review the record of his legal education "de novo" to determine whether he has met the equivalency requirements of S.J.C. Rule 3:01, § 3.4. The board responds that, whether its decision should be reviewed under an abuse of discretion standard, see *Mead, petitioner,* 372 Mass. 253, 255-257 (1977) (denial of bar applicant's claim not an abuse of discretion by board), or whether we review the matter de novo, the record demonstrates that its decision should be affirmed.

We consider first the appropriate standard of review of the petitioner's claim. Although the initial scrutiny of the qualifications of each applicant is delegated by statute and by rule to the board, we retain the inherent and exclusive jurisdiction over any decision to admit an attorney to the practice of law in this Commonwealth. See G. L. c. 221, § 37; S.J.C. Rule 3:01. While we grant substantial deference to a decision of the board, and rely on the accumulated knowledge and experience of its members in interpreting and applying our rules, we have the final authority to determine who may practice law in the Commonwealth. See *Matter of Prager,* 422 Mass. 86, 91 (1996) ("[w]hile deference is given to the decision of the board, this court retains ultimate authority to decide a person's fitness to practice law in the Commonwealth"); *Matter of Allen,* 400 Mass. 417, 421 (1987), quoting *Matter of Gordon,* 385 Mass. 48, 58 (1982) ("[o]rdinarily, this court gives deference to the recommendations of the Board, but 'the ultimate duty of decision rests with this court' "). See also *Novak* v. *Board of Bar Examiners,* 397 Mass. 270, 274 (1986) (permission denied by board, rules committee declined to grant waiver, but "interests of equity and justice are best served by granting the plaintiff a waiver of S.J.C. Rule 3:01, § 3.3"). Accordingly, we review the legal education of the petitioner de novo, and make our own determination whether he has met the requirements of S.J.C.

Rule 3:01, § 3.4.[9] See *Matter of Altshuler*, 171 Wis. 2d 1, 15 (1992) (Abrahamson, J., dissenting) (Supreme Court of Wisconsin should review de novo decision of its Board of Bar Examiners not to admit foreign law graduate).

On our own review of the record, we conclude that the petitioner has not demonstrated that his legal education is the equivalent of a juris doctor degree obtained from a law school approved by the ABA. S.J.C. Rule 3:01, § 3.4. In *Matter of Tocci*, 413 Mass. 542, 548 (1992), we explained that there is "a direct rational connection between the requirement of graduation from an accredited law school and an applicant's fitness to practice law." The ABA standards relating to the accreditation of law schools, we observed, provide assurance that applicants to the bar "have experienced a generally uniform level of appropriate legal education." *Id.*, quoting *Novak* v. *Board of Bar Examiners*, 397 Mass. 270, 274 (1986). We stated that "we sought to provide an objective method of determining the quality of the educational environment of prospective attorneys." *Tocci, supra*, quoting *LaBossiere* v. *Florida Bd. of Bar Examiners*, 279 So. 2d 288, 289 (Fla. 1973). We also observed that, because the ABA does not evaluate foreign law schools for accreditation, "it is reasonable to provide an alternative approval system for foreign law school graduates." *Tocci, supra* at 549. We are asked here to decide whether a particular applicant has received the equivalent of the "appropriate legal education," *Novak* v. *Board of Bar Examiners, supra* at 274, that we require of graduates of domestic law schools.

Because foreign applicants present credentials of an immensely wide variety, neither we nor the board have defined the precise contours of "equivalen[cy]." S.J.C. Rule 3:01, § 3.4. At a minimum, however, there must be a recognizable and significant resemblance between a foreign applicant's complete legal education and the legal education that generally is provided to a recipient of a juris doctor degree in a law school approved by the ABA. The touchstone of that requirement is an education (whether by formal instruction or by practice in an American or other common-law jurisdiction) in the fundamentals of American law — constitutional, common and statutory.

The petitioner says that he meets the requirements of our rule

---

[9]In a case such as this in which the board relied entirely on the same documentary record that is now before us, exercise of our own discretion is peculiarly appropriate.

because he is the recipient of two graduate degrees from an ABA-approved law school, Tulane. Review of the courses he completed at Tulane provides a ready explanation why a post-graduate degree at an ABA-approved law school may not necessarily be equivalent to the legal education obtained in a juris doctor degree. The subjects that the petitioner studied were addressed almost exclusively to his primary interest, international business transactions. See note 5, *supra.* Of the core courses typically required of a juris doctor candidate, the petitioner successfully completed only one, contracts. The three-week introductory course to the American legal system that he completed is not a substitute for a semester or more of study and examination in the substantive areas surveyed in that course.[10] The petitioner also points to the fact that he has audited four other courses ordinarily required of candidates for a juris doctor degree. He provides no explanation why he chose not to receive credit for those courses. In any event, the "audit" of a course is not equivalent to enrolling in a course, taking an examination, and receiving a passing grade. The board, and this court, would be hard pressed to evaluate a candidate who claimed to have "audited" courses where the candidate's familiarity with the subject matter has not been tested. We recognize that the petitioner received good or excellent grades at Tulane. Our requirement of an equivalent legal education is not to test the intellectual capabilities of an attorney who has graduated from a foreign institution, but to examine the applicant's familiarity with the fundamentals of American law. We do so because there is a strong public interest in ensuring that the license to practice law in this Commonwealth be granted to applicants only on a reasonable showing that they have demonstrated that familiarity.[11]

The petitioner also relies on his admission to the bars of

---

[10]Tulane Law School identifies the "substantive" American law covered in its introductory course as "contract, torts, civil procedure, federal jurisdiction, statutory construction, constitutional law, criminal procedure, administrative law, and antitrust." The board has determined that "[g]enerally" it will require applicants from foreign countries to take courses in "American Constitutional Law, Federal Courts and Jurisprudence, the Uniform Commercial Code, and the core curricular courses offered in the first year at ABA-approved law schools." Review of the petitioner's entire legal education reveals no demonstrated knowledge in any of these areas other than contracts.

[11]The petitioner says that he works for his current employer as "an attorney practicing immigration law, a law clerk, and an international law consultant." We overlook the suggestion implicit in his representation that he improperly

Louisiana and New York as evidence of his qualification to take the bar examination here.[12] In *Tocci, supra* at 550, we rejected a claim that we afford full faith and credit to the decision of the Supreme Court of New Hampshire to waive that court's rule requiring graduation from an ABA-approved law school. We observed there that the system of rules a State court adopts to govern admission to the bar "is a matter of local policy." *Id.* See *In re Application of Hansen*, 275 N.W.2d 790, 798 (Minn. 1978), appeal dismissed, 441 U.S. 938 (1979) (refusing to defer to another State's assessment of bar applicant's educational qualifications); *Application of Schatz*, 80 Wash. 2d 604, 610-611 (1972) (noting that regulation of qualifications for admission to bar "is peculiarly a domestic affair" not subject to full faith and credit). While admission to practice in other jurisdictions is not wholly irrelevant, in this case the petitioner has never actually practiced in either Louisiana or New York. He cannot claim that he has been educated in the fundamentals of American law on account of practice in either of those jurisdictions.

The petitioner complains that the board's "special treatment" of graduates of Canadian law schools "makes no sense" because those schools may not require the same courses as those required for a juris doctor at an ABA-approved law school. He also asserts that he is more qualified than other graduates of foreign law schools who have been permitted by the board to take the bar examination.[13] We reach our own decision about the petitioner's qualifications, without regard to the qualifications of

has engaged in the practice of law in the Commonwealth without admission to the bar. Were he admitted to the practice, his practice would not be limited to "immigration law," or to international business transactions. He would be licensed to represent clients in all legal matters including, for example, criminal, family, trust, property, or other legal subjects, although he has no demonstrated legal training in any of those areas of law.

[12]He also argues that he should be entitled to demonstrate his familiarity with the necessary legal subjects by being given the opportunity to take the bar examination. Successful completion of the bar examination does not, itself, demonstrate adequate preparation for the practice of law in this Commonwealth. Were that the case, we would not require that every candidate for admission to the bar be the holder of a high school, college, and graduate law degree, the latter from a school approved by the ABA. S.J.C. Rule 3:01, § 3.

[13]The board provided to the petitioner information concerning its eligibility determination of foreign applicants who had sought permission to take the bar examination in 1997 and the latter part of 1996. Of the twenty-nine applicants from foreign law schools who had graduated from a faculty that was not a "common-law" faculty, twenty-six applicants were found by the board to be

others who may have been permitted to take the bar examination.[14] In our view, however, it is reasonable for the board to evaluate differently graduates of law schools in countries whose jurisprudence rests in whole or in part on the English common-law tradition because they share a tradition similar to ours. As to Canadian law schools in particular, the board provides "special treatment" only to graduates of common-law faculties of Canada and only from those faculties that are eligible to be members of the Law School Admissions Council of the ABA. For the reasons that we described in *Tocci, supra* at 549, we rely on the special expertise of the ABA to evaluate those law schools. The policy guidelines adopted by the board, see Appendix, are a reasonable accommodation between the interests of each individual applicant and the resources and expertise of the board available to evaluate each individual.

The petitioner, as an alternative form of relief, asks that he be required to complete particular courses prescribed by the board, rather than completing a juris doctor degree at an ABA-approved law school. The board, on occasion, has allowed graduates of foreign law schools to satisfy the equivalency requirement of S.J.C. Rule 3:01, § 3.4, by taking such courses, but that option has not been granted except in the most persuasive cases to foreign graduates. The petitioner has failed to demonstrate more

---

ineligible to sit for the bar examination. The remaining three applicants were informed by the board that they would be eligible to take the bar examination, subject to the completion of certain prescribed courses at an ABA-approved law school. Of the twenty-two applicants who had graduated from "common-law" faculties from countries other than Canada, thirteen applicants were found by the board to be ineligible to take the bar examination, and nine were informed by the board that they would be eligible to take the bar examination on the completion of certain prescribed courses in an ABA-approved law school.

[14]The data provided by the board concerning three applicants from noncommon-law countries who were permitted to take the bar examination and with whom the petitioner compares himself do not identify what courses those applicants had completed, and we cannot comment on whether their education is more "equivalent" to the requirements of a juris doctor program than the petitioner's. We can discern nothing in the record, however, that suggests that the board abused its discretion in permitting those three applicants to take the bar examination. We also note that in his reservation and report, the single justice concluded that the information provided to the petitioner by the board in discovery was sufficient, and he saw "no need for further discovery," adding that "the petitioner is free to argue this position with the Full Court." The petitioner has not pressed the point here, and has not requested further discovery from the board.

than the most minimal training in the basic aspects of American law, and we see no reason in this case to grant his request.

The equivalency mechanism that we have provided in S.J.C. Rule 3:01, § 3.4, reflects our recognition that we are part of a global economy, that lawyers engage in representing clients across national and international boundaries, that qualified lawyers move from one jurisdiction to another, and that we have much to gain from the knowledge and experience of lawyers educated in different systems of laws. Our rule recognizes the mobility of lawyers and expresses our desire to accommodate graduates from foreign law schools. See *Matter of Corliss*, 424 Mass. 1005 (1997); *Tocci, supra.* Certainly, the board does not have unbridled discretion to place in the path of immigrants and other applicants from foreign law schools artificial or unreasonably burdensome obstacles to their practice of law in Massachusetts. Requiring an applicant to complete a juris doctor degree may impose a hardship on some foreign law graduates, and we do not require all foreign law graduates to receive such a degree before they may take the Massachusetts bar examination. But we do require that each foreign law graduate who seeks admission to the bar demonstrate that she or he has received an appropriate legal education in the fundamentals of American law. There are thousands of educational institutions, internationally, that award degrees, graduate and undergraduate, in law, and the board does not have the financial or other resources to determine whether every such institution provides a legal education that is the equivalent of our requirements. The scrutiny of each applicant's qualifications is delegated to the board to ensure that we admit to practice here only those applicants who are versed in our legal rules so that the public may rely on appropriately trained professionals to protect their interests. We are confident that the board recognizes that rigid barriers have no place in these determinations, and that it will give careful and individualized attention to the legal education of each foreign law graduate who seeks to be admitted to practice here.[15]

If greater similarities existed between the law of the People's

[15]In another context, we said that the board "is dedicated to the public interest, as commissioned in the words of the rules of this court, and as demonstrated in the high standards of performance of the members of the Board in the several years of its existence." *Matter of Gordon*, 385 Mass. 48, 58 (1982).

Republic of China and our law; if the former were based on the English common-law system, which it is not; if the petitioner, as a graduate student at Tulane, had taken for credit and passed more of the courses required of a juris doctor degree, which he has not; if the petitioner had engaged in the practice of law in Louisiana or New York for some substantial period of time, which he has not, this would be a different case. On this record, the petitioner has not demonstrated that he has received a legal education that is the equivalent of the requirement of S.J.C. Rule 3:01, § 3.3.

3. *Delegation of the board's authority.* A member of the board, acting "pursuant to full and informed delegation of the authority by the Full Board," determined that the petitioner was not eligible to take the bar examination. The petitioner argues that the board has no authority to delegate to one member the authority to make such a determination. The board points out that it receives hundreds of applications every year, that there are many applications from foreign law school graduates, that to require the convening of the board for consideration of each application would be unduly burdensome, and that nothing in S.J.C. Rule 3:01 requires that the full board be convened to make these determinations. We agree. The petitioner relies entirely on case law concerning the delegation of authority to administrative agencies. The board of bar examiners is not an administrative agency subject to G. L. c. 30A. See *Mead, petitioner,* 372 Mass. 253, 255 (1977). S.J.C. Rule 3:01 does not mandate the manner by which the board must make the many determinations entrusted to it, and we decline to impose on it or its members the requirement sought by the petitioner.

The petitioner's application to sit for the Massachusetts bar examination is denied. The matter is remanded to the county court for the entry of an order granting summary judgment to the board.

*So ordered.*