Yakah *v*. Board of Bar Examiners.

**Mathias Kwasi Yakah *vs*. Board of Bar Examiners.**

Suffolk. December 5, 2006. - April 12, 2007.

Present: Ireland, Spina, Cowin, & Cordy, JJ.

*Attorney at Law,* Admission to practice, Educational requirements. *Board of Bar Examiners. Supreme Judicial Court,* Membership in the bar. *Practice, Civil,* Membership in the bar.

This court affirmed the recommendation of the Board of Bar Examiners to deny a petitioner's request under S.J.C. Rule 3:01, § 6.2.3, to be admitted to the Massachusetts bar by motion without first obtaining a juris doctor degree, where the petitioner failed to demonstrate that his legal education at the Ghana School of Law was equivalent to a legal education at a law school approved by the American Bar Association. [741-744] Cordy, J., concurring in part, with whom Cowin, J., joined.

Petition commenced in the Supreme Judicial Court for the county of Suffolk on October 26, 2005.

The case was reported by *Cordy,* J.

*William F. Looney, Jr. (Charles P. Kindregan, Jr.,* with him) for the petitioner.

*Katy E. Koski (Robert J. Muldoon, Jr.,* with her) for Board of Bar Examiners.

Ireland, J. The Board of Bar Examiners (board) denied the petitioner's request to be admitted by motion, requiring the petitioner to first obtain a juris doctor degree. S.J.C. Rule 3:01, § 6.2, as appearing in 382 Mass. 755 (1981). The petitioner appealed from the decision to a single justice, who reserved and reported the issue to the full court. Because we conclude that the petitioner has failed to demonstrate that his legal education at the Ghana School of Law is equivalent to a legal education at a law school approved by the American Bar Association (ABA), we affirm the recommendation of the board to deny the petitioner's request to be admitted by motion.

*Facts and procedural background.* In 1985, the petitioner

graduated from the University of Ghana with a Bachelor of Arts (Honours) degree. Then, in 1995 and 1997, respectively, he completed a "preliminary law course" and was awarded a "qualifying certificate" from the Ghana School of Law. At the Ghana School of Law, the petitioner studied a variety of legal courses and obtained passing grades in each subject. Although the petitioner has never been admitted to practice law in the United States, he was admitted in the Republic of Ghana in August, 1997. He practiced both civil and criminal law in all courts, including the Supreme Court of Ghana.

In September, 2000, the petitioner relocated to Massachusetts and, in 2005, obtained a master of laws (LL.M.) degree from the New England School of Law. In 2005, the petitioner submitted a request to the board requesting to be admitted to the bar by motion. The board denied his request, relying on S.J.C. Rule 3:01, § 6, as amended, 425 Mass. 1331 (1997). The petitioner's accompanying documentation included his transcript from the Ghana School of Law and evidence that he passed the multistate professional responsibility examination, as well as recommendations from two members of the Massachusetts bar, several from practicing attorneys in Ghana, and one from the director of legal education of the Ghana School of Law. The petitioner did not submit course descriptions along with his transcripts.

In denying the petitioner's request for admission by motion, the board stated that "the applicant's acquirements and qualifications are not sufficient for admission on motion." In October, 2005, the petitioner filed a petition to this court requesting judicial review of the board's decision. In November, 2005, this court stayed the board's nonqualification report and referred the matter to the single justice, who reported it to the full court.

*Discussion.* Supreme Judicial Court Rule 3:01, § 6.2.3, as appearing in 382 Mass. 755 (1981), enables a person who has been admitted or enrolled as an attorney of the highest judicial court of a foreign country to apply to the Supreme Judicial Court to be admitted as an attorney without being required to sit for the bar examination. In its discretion, the board may waive the examination requirements if certain conditions are met. S.J.C. Rule 3:01, § 6.2. Here, the board determined that the

petitioner did not satisfy the conditions of S.J.C. Rule 3:01, § 6.2.3.[1] The petitioner argues that he should be admitted to practice in Massachusetts because his legal education and training do in fact satisfy the requirements of S.J.C. Rule 3:01, § 6.2.3.[2] Although we generally give deference to the board's expertise and experience, we review the petitioner's legal education de novo to ascertain whether he has met the requirements of S.J.C. Rule 3:01, § 6.2.3. See *Wei Jia* v. *Board of Bar Examiners,* 427 Mass. 777, 782-783 (1998).

As we discussed in *Osakwe* v. *Board of Bar Examiners, ante* 85, 90-91 (2006), a case that considered a petitioner's application to sit for the bar examination pursuant to S.J.C. Rule 3:01, § 3.4, as appearing in 382 Mass. 754 (1981), in order to ascertain whether the applicant has acquired the education equivalent to that of an ABA-accredited law school, we examine an applicant's "general" and "particular" qualifications to determine whether a familiarity with the fundamentals of American law has been obtained. The "general" evaluation focuses on the exposure to common-law tradition and involves a determination whether an applicant has obtained a legal education at a school in a country "whose jurisprudence rests upon the common-law tradition." *Id.* at 91, quoting Massachusetts Board of Bar Examiners, Information Relating to Admission of

[1]Supreme Judicial Court Rule 3:01, § 6.2.3, as appearing in 382 Mass. 755 (1981), states: "The applicant shall have completed the equivalent of American high school; shall have completed work in college or university equal to that warranting a bachelor's degree in the United States; and shall have completed such legal education as, in the opinion of the board of Bar Examiners, is equivalent to that provided in law schools approved by the American Bar Association."

[2]Alternatively, the petitioner argues that he be allowed to sit for the Massachusetts Bar examination pursuant to S.J.C. Rule 3:01, § 3, as amended, 437 Mass. 1302 (2002). Supreme Judicial Court Rule 3:01, § 3.4, as appearing in 382 Mass. 754 (1981), allows an applicant who has obtained a legal education equivalent, in the board's opinion, to that provided in an ABA-accredited law school to sit for the bar examination without first obtaining a juris doctor degree from an ABA-accredited law school.

Before submitting his application for admission by motion, the petitioner had previously submitted an application requesting to sit for the bar examination pursuant to S.J.C. Rule 3:01, § 3.4, which was denied by the board, requiring the petitioner to first obtain a juris doctor degree from an ABA-accredited law school. This issue was neither presented to nor reported by the single justice.

Attorneys in Massachusetts, at 8 (Mar. 2006). The "particular" evaluation, on the other hand, involves a determination of the extent to which an applicant has been exposed to American law. *Osakwe* v. *Board of Bar Examiners, supra.* Relevant to this evaluation is whether the applicant has obtained an LL.M. degree from an ABA-accredited law school and, if the applicant has been admitted to practice in other United States jurisdictions, the length of time and the nature of the applicant's practice. *Id.*

The petitioner claims that his four-year study at the Ghana School of Law exposed him to traditional ABA-accredited law school courses, such as contracts, torts, criminal law, equity, and property. He argues that we should consider Ghana's English common-law tradition because Ghana, like the United States, evolved from an English colony and that his legal education at Ghana School of Law exposed him to the same legal traditions as an ABA-accredited law school education. He also claims that his one-year educational experience at the New England School of Law expanded his exposure to the American legal system through his completion of courses such as American constitutional law, contracts, criminal law, and Massachusetts practice. Furthermore, the petitioner submits that his civil and criminal practice in Ghana further exposed him to common-law jurisprudence.

After careful review of the materials the petitioner submitted for consideration, we conclude that there is insufficient evidence substantiating the petitioner's claim that his studies at the Ghana School of Law are equivalent to the legal education he would have obtained from an ABA-accredited law school program. Although the petitioner submitted a copy of his transcript from the Ghana School of Law, unlike the petitioner in *Osakwe* v. *Board of Bar Examiners, supra,* he did not include descriptions of the courses. As we stated in *Osakwe* v. *Board of Bar Examiners, supra* at 93, "[t]here must be further evidence that these courses expose students to rules, principles, and modes of reasoning similar to those in ABA-accredited law schools." Here, although the petitioner may have obtained his legal education in a country whose legal system derived from an English common-law tradition, the only support the petitioner has included is a credential evaluation report that merely indicates that his study at

the Ghana School of Law is equivalent to four years of "professional study" as opposed to the equivalent of a juris doctor degree. The petitioner, did, on the other hand, obtain an LL.M. degree after completing one year of study at the New England School of Law. However, because the petitioner failed to submit the applicable course descriptions, we are unable to ascertain whether his legal training is, in fact, similar in substance to that of an ABA-accredited law school education. Moreover, unlike the *Osakwe* case, the petitioner here has not presented other qualifications indicative of more familiarity with American law, such as admission to other United States jurisdictions. We thus conclude that the petitioner's one-year exposure to American law is not enough to satisfy the requirements of S.J.C. Rule 3:01, § 6.2.3.

*Conclusion.* The petitioner has not demonstrated that his legal education at the Ghana School of Law is equivalent to a juris doctor degree. Accordingly, the matter is remanded to the county court for the entry of a judgment affirming the decision of the board to deny the petitioner's request to be admitted to the bar under S.J.C. Rule 3:01, § 6.2.3.

*So ordered.*


CORDY, J. (concurring in part, with whom Cowin, J., joins). I agree with the court that Mathias Kwasi Yakah did not satisfy the requirement that applicants for admission on motion demonstrate a legal education "equivalent to that provided in law schools approved by the American Bar Association" (ABA). S.J.C. Rule 3:01, § 6.2.3, as appearing in 382 Mass. 755 (1981). The rule permitting admission on motion is designed for attorneys with a long history of practice and with clear qualifications to practice. It is an exception to the general requirement that all applicants sit for the bar examination, committed to the discretion of the Board of Bar Examiners (board). S.J.C. Rule 3:01, § 6, as amended, 425 Mass. 1331 (1997). Given the inability fully to assess Yakah's qualifications, the board properly exercised its discretion by recommending that he not be admitted on motion.

I would, however, remand Yakah's alternative request (not

made before the single justice but made before the full court) that he be allowed to sit for the bar examination under S.J.C. Rule 3:01, § 3.4, as appearing in 382 Mass. 754 (1981), to the board for consideration in light of our discussion in *Osakwe* v. *Board of Bar Examiners, ante* 85 (2006) (*Osakwe*), with the following further direction.

To determine whether a foreign-trained applicant qualifies to sit for the bar examination, the board looks at whether the applicant's educational attainments are equivalent to those of an applicant holding the juris doctor degree from an ABA-approved law school. In doing so, the framework we described in *Osakwe, supra*, should be applied. That framework built on our earlier decision in *Wei Jia* v. *Board of Bar Examiners*, 427 Mass. 777, 783 (1998) (*Wei Jia*), particularly its principle that "there must be a recognizable and significant resemblance between a foreign applicant's complete legal education and the legal education that generally is provided to a recipient of a juris doctor degree in a law school approved by the ABA." To elaborate on what constituted "a recognizable and significant resemblance," we considered the provisions of S.J.C. Rule 3:01, § 3.4, and the guidelines published by the board entitled Information Relating to Admission of Attorneys in Massachusetts (Mar. 2006) (guidelines). See *Osakwe, supra* at 90-92. The result was a two-part analysis. In the first part, the "general" evaluation, the applicant's exposure to the English common-law tradition is to be considered. *Id.* at 91. In the second part, the "particular" evaluation, the applicant's exposure to American law is to be considered. *Id.*

Yakah trained in his native Ghana, which has a legal system derived from the English common-law tradition. Cf. *Osakwe, supra* at 92 ("Nigeria, like Massachusetts, has a legal system derived from the English common-law tradition"). Having earned his Bachelor of Arts degree in political science from the University of Ghana in 1985, Yakah enrolled in the Ghana School of Law in Accra in October, 1993. After two years of study, during which he obtained passing grades in all of his classes,[1] Yakah was awarded the degree Bachelor of Laws

[1] Yakah's classes included a wide range of common-law subjects and

(B.L.).[2] He then did a further two years of study (still at the Ghana School of Law) to qualify as a barrister. On October 3, 1997, Yakah was called to the bar of Ghana, entitling him to practice in all courts of that nation, including the Supreme Court of Ghana. By virtue of his education and bar admission in Ghana, Yakah appears to qualify under the "general evaluation" portion of the *Osakwe* framework.

Nevertheless, it cannot conclusively be determined that Yakah satisfies the general evaluation. In *Osakwe, supra* at 93, we said that "a candidate cannot satisfy our education requirement simply by showing that he has taken courses named, for example, 'property' and 'contracts.' There must be further evidence that these courses expose students to rules, principles, and modes of reasoning similar to those in ABA-accredited law schools." Unlike the applicant in *Osakwe*, Yakah has not submitted the descriptions of his courses and the educational program at his Ghanian law school, material which we found necessary to complete our evaluation in *Osakwe*. This is a ministerial omission, but a critical one. Without this information, we cannot assure ourselves that Yakah's "initial common-law training was similar not just in name, but also in substance, to that found in ABA-approved schools." *Id.* This is not to say that Yakah's common-law exposure was not similar in substance to that in an American juris doctor program, just as Osakwe's was. Rather, the problem is that Yakah has not met the evidentiary burden to demonstrate that it was.

Because Yakah fails on the general test for want of evidentiary support, the court need not determine whether he would

Ghanian legal subjects. His transcript from the Ghana School of Law shows first and second year courses in constitutional law, the Ghana legal system, contracts, criminal law, real property, torts, and equity and succession. It shows third- and fourth-year courses in civil procedure, criminal procedure, company law, evidence, accounting, industrial law, commercial law, conveyancing, family law, taxation, statutory interpretation, advocacy and legal ethics. This list bears a remarkable resemblance, at least in name, to the courses an American juris doctor student might take.

[2]The fact that Yakah's degree is called a bachelor's degree rather than a master's or a doctoral degree (like the juris doctor) is irrelevant. "This difference in name and form masks a substantive similarity in legal education. . . . Our analysis here focuses on the nature and quality of [Yakah's] education, not the formal title of his degrees." *Osakwe* v. *Board of Bar Examiners, ante* 85, 86 n.1 (2006) (*Osakwe*).

satisfy the particular test in order to deny his request to sit for the bar examination. Nevertheless, it is appropriate to discuss this portion of the test in order to provide guidance to the board in applying the *Osakwe* test. This is so for two reasons. First, once the omissions in Yakah's application are corrected, it is likely that he will be able to satisfy the general analysis. The board will then have to reconsider his application with respect to the particular analysis. Second, the board will doubtless consider an increasing number of applications from foreign attorneys trained in common-law faculties who seek to take the Massachusetts bar examination. Evaluating these in a uniform and fair manner requires detailed and specific guidance. To that end, a well-considered and evenly applied set of guidelines issued by the board would be a more appropriate solution than case-by-case pronouncements from this court. Developing a detailed set of guidelines for the *Osakwe* analysis falls within the board's particular expertise.

In evaluating any complete application from Yakah and in developing guidelines for evaluating future applicants, the board should give particular consideration to its power to "require such applicant to take such further legal studies as the Board may designate." S.J.C. Rule 3:01, § 3.4. In many cases, including Yakah's, candidates will have academic and practical experiences that would make a requirement that a foreign-educated applicant complete an entire juris doctor program overly burdensome and repetitive of past training. This is borne out in Yakah's case by an examination of the transcript from his Master of Laws (LL.M.) degree program from the New England School of Law, an ABA-accredited institution. In his LL.M. program, Yakah took courses in United States constitutional law, contracts, immigration law, American criminal law, American criminal procedure, Massachusetts practice, and New York practice. Thus his LL.M. studies, like Osakwe's, and unlike the petition we rejected in *Wei Jia,* involved course work in legal subjects specific to the United States, or in common-law topics with a focus on American law. Compare *Osakwe, supra* at 93 (courses in American civil procedure, American criminal procedure, immigration law, Federal taxation, torts, and United States law and legal institutions), with *Wei Jia, supra* at 784

(graded LL.M. courses all in international business, common-law classes all audited). Whether Yakah's LL.M. course work is sufficient to meet the particular analysis is a question for further consideration by the board. It would appear that Yakah, by virtue of his LL.M., has made substantial progress toward meeting the particular analysis.

Any guidelines that the board may adopt should also address factors relevant to the particular analysis. The first and most important of these is the appropriate mix of courses in American subjects needed to indicate the proficiency sought by the particular analysis. A set of topics in which the candidate must demonstrate competence or a selection of courses would be more appropriate than an exact list. The latter option would incorrectly suggest that each applicant's (possible) further educational needs are the same, and that each applicant for admission should have taken exactly the same set of courses.[3] It is virtually impossible to perform an exact comparison of courses taken by any two applicants. By way of example, Osakwe's and Yakah's LL.M. courses were on different subjects and taken at different institutions. Each took courses relevant to the particular analysis that the other did not. It is unsatisfactory to say that the particular course work done by Gregory Osakwe is the proper list of topics that Yakah or any other foreign-trained applicant must study in order to meet the particular analysis.

The board also should consider admission and practice in other jurisdictions as "relevant to the particular analysis and helpful (although not conclusive) to [an applicant's] claim." *Osakwe, supra* at 94. Admission to the bar of a sister State is not the end of the particular analysis; nor is the lack of such an admission an automatic disqualification of an applicant. Rather, this factor should be relevant in cases where there seems to be sufficient exposure to American law to satisfy the particular analysis, and the board is looking for a way to determine whether it will require any further course work before permitting an applicant to sit for

---

[3]As we noted in *Osakwe, supra* at 93 n.10, almost every applicant for admission, including those holding the juris doctor degree from an ABA-approved law school, have not completed formal course work in a number of the topics tested by the bar examination.

the bar examination. This is precisely how Osakwe's admission and practice in New York State were used in our analysis in his case: clarifying any doubt we may have had regarding his particular knowledge of American law. *Osakwe, supra* at 93-94. Yakah, in contrast, has not been admitted to practice elsewhere in the United States. The board may conclude that this supports a requirement of further course work before allowing Yakah to sit for the bar examination.

Admission after examination is open to all of those satisfying the preliminary education requirements described in S.J.C. Rule 3:01, § 3, as amended, 437 Mass. 1302 (2002). Unlike applications for admission on motion, the board does not have the discretion not to permit an otherwise qualified applicant to sit for the bar examination. See *id.* Those passing the examination are admitted as a matter of course if no objection is made as to their moral character. S.J.C. Rule 3:01, § 5.1, as appearing in 411 Mass. 1321 (1992). The denial of Yakah's request to be admitted on motion should in no way prejudice the consideration of his request to take the bar examination once he has submitted the requisite additional materials. I would therefore remand his request to the board, where he should be permitted to correct the omissions in his application, and the board should then consider his request to sit for bar examination in accordance with the discussion in *Osakwe, supra,* and this opinion.