IN RE APPLICATION OF DAVID MATTHEW ZARITZKY BROWN
FOR ADMISSION TO THE NEBRASKA STATE BAR.
708 N.W.2d 251

Filed January 13, 2006.    No. S-34-050002.

David Zaritzky Brown, pro se.

Mark A. Fahleson and Glen Th. Parks, of Rembolt Ludtke, L.L.P., for Nebraska State Bar Commission.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## I. INTRODUCTION

David Matthew Zaritzky Brown is a Canadian attorney seeking admission to the Nebraska bar. He filed an application with the Nebraska State Bar Commission (Commission) seeking admission without examination as a Class I-A applicant. See Neb. Ct. R. for Adm. of Attys. 5A(1) (rev. 2005). The Commission denied Brown's application on the basis that he did not possess a first professional degree from a law school approved by the American Bar Association (ABA) as required by rule 5C. Thereafter, at Brown's request, a hearing was held before the Commission, and Brown presented evidence regarding his educational qualifications. The Commission again denied Brown's request, and he appeals.

## II. FACTS

Brown is a citizen of Canada and has been granted permanent resident status to work in the United States. He received a bachelor of arts degree from the University of Toronto in 1993 and a bachelor of laws degree (LL.B.) from the University of Windsor in 1996.

Brown earned his LL.B. after successfully completing 3 years of legal studies at the University of Windsor Faculty of

Law (Windsor) in Ontario, Canada. Windsor is 1 of 16 English-speaking, common-law Canadian law schools. Its LL.B. program is approved by the Ontario Ministry of Education, and an LL.B. from Windsor is recognized by all the provincial law societies, as well as the Federation of Law Societies of Canada, as providing the prerequisite degree for admission to the bar in all the provinces and territories except Quebec, where the law is based on civil code.

Mary Gold, an associate dean and associate professor at Windsor who holds both an ABA-approved juris doctor degree (J.D.) and a Canadian LL.B., opined that based on her studies at an ABA-accredited law school and her experience at Windsor, the legal education at Windsor is equivalent to that available at an ABA-accredited institution. She stated that many Windsor graduates apply for admission into various state bars in the United States and are successful on their bar examinations.

Brown successfully completed the required core courses at Windsor, including administrative law, contracts, civil procedure, constitutional law, criminal law and procedure, legal process (introduction to common-law legal system), legal writing and research, property, and torts. Brown's course of study also involved classes in business associations, corporate law/secured transactions, debtor-creditor relations, environmental law, evidence, family law, legal history, municipal law, public international law, and remedies. Additionally, Brown participated in the clinical law and advocacy program at Windsor, where he gained practical experience in interviewing clients, negotiating, handling appeals on an administrative level, and representing clients.

Windsor is ineligible for ABA accreditation because it is a Canadian law school; however, its education has been ABA-approved for inclusion in a joint American-Canadian law degree program with the University of Detroit Mercy School of Law (Detroit Mercy), an ABA-approved school located 15 minutes from Windsor. At the end of 3 years of concurrent study at Windsor and Detroit Mercy, successful students earn both a J.D. from Detroit Mercy and an LL.B. from Windsor. Associate Dean Gold stated she believes the educational experiences at Windsor and the ABA-accredited Detroit Mercy are similar enough to permit students to study seamlessly at both. Brown

did not participate in the joint program because he could not afford the additional cost of the program.

To gain admission to the Law Society of Upper Canada (Ontario's bar association), Brown completed three required phases of the bar admissions process. Phase One was a 1-month skills program in which Brown learned to draft motions, affidavits, and memoranda; interview clients; and negotiate contracts. Phase Two (known as the period of articles) was a 1-year apprenticeship in the practice of law with a law society-approved law firm. During Brown's period of articles, he rotated through several of the firm's practice groups, including civil litigation, corporate and commercial, labor and employment, real estate, and tax and estate planning. Phase Three was a 3½-month period composed of nine modules. Eight modules consisted of instruction and examinations in core legal areas, including business law, family law, civil litigation, professional responsibility and practice management, real estate, estate planning, criminal law, and public law. The ninth module involved instruction and an examination in accounting.

Brown was admitted to the Ontario bar in February 1998. Thereafter, he was hired as an associate by the Canadian law firm where he had completed his articling requirement. He worked there for about a year practicing labor and employment law. He then joined another Canadian firm, where he practiced business immigration law for about 2 years. In particular, he assisted business clients with U.S. green card and H-1B (specialty occupation visa) applications.

Brown passed the California bar examination and was admitted to the California bar in December 2000. Brown joined a California law firm in January 2001. He practiced there for about 4 years in the areas of U.S. and Canadian business immigration law, facilitating the international movement of corporate professionals.

Brown decided to move to Nebraska because, among other reasons, his in-laws live here and a Nebraska law firm has hired him. Brown is currently in good standing with both the Law Society of Upper Canada and the California bar. No complaints have been filed against him in either jurisdiction.

In October 2004, Brown applied to be admitted to the Nebraska bar without examination. On December 16, the Commission denied Brown's application because he did not receive his law degree from an ABA-approved law school. Brown appealed the Commission's denial, and a hearing was held on January 21, 2005. Brown testified and presented evidence at the hearing. The Commission again denied Brown's application on the basis that he lacked a first professional degree from an ABA-approved law school. Brown now appeals to this court.

### III. ASSIGNMENTS OF ERROR

Brown argues that the Commission erred in (1) determining that a Class I-A applicant is required to possess a first professional degree from an ABA-approved law school; (2) determining that it lacked discretion to examine whether Brown's Canadian educational credentials were "at least equal to" those required for admission by examination under rule 5A(1)(b); (3) determining that the only available option for Brown to gain admission was through a Nebraska Supreme Court waiver of the educational requirement; and (4) not applying the functional-equivalent test set forth in *In re Application of Collins-Bazant*, 254 Neb. 614, 578 N.W.2d 38 (1998).

### IV. STANDARD OF REVIEW

The Nebraska Supreme Court will consider the appeal of an applicant from a final adverse ruling of the Commission de novo on the record made at the hearing before the Commission. *In re Application of Gluckselig*, 269 Neb. 995, 697 N.W.2d 686 (2005); Neb. Ct. R. for Adm. of Attys. 15 (rev. 2000).

### V. ANALYSIS

The Nebraska Supreme Court is vested with the sole power to admit persons to the practice of law in this state and to fix qualifications for admission to the Nebraska bar. *In re Application of Gluckselig, supra; In re Application of Collins-Bazant, supra.* See Neb. Const. art. II, § 1, and art. V, §§ 1 and 25.

For purposes of bar admission, Class I-A applicants are those who (1) have been admitted to the bar of another state, (2) possess educational qualifications at least equal to those required at

the time of application for admission by examination to the Nebraska bar, and (3) have passed an examination equivalent to the Nebraska bar examination and have passed the Multistate Professional Responsibility Examination with a score of at least 85. See, rule 5A(1); Neb. Ct. R. for Adm. of Attys. 16 (rev. 2004).

The primary issues in this appeal are (1) whether a Class I-A applicant must possess a first professional degree from an ABA-approved law school and (2) if so, whether a waiver of that requirement is appropriate in this case.

## 1. EDUCATIONAL QUALIFICATIONS FOR CLASS I-A APPLICANTS

The Commission denied Brown's application because he lacked a first professional degree from an ABA-approved law school. Rule 5A(1)(b) requires a Class I-A applicant to have attained "educational qualifications at least equal to those required" of Class II applicants (i.e., those required to take the written examination). At the time of examination, Class II applicants must possess a J.D. from an ABA-approved law school. See, *In re Appeal of Dundee*, 249 Neb. 807, 545 N.W.2d 756 (1996); rule 5C. The issue is whether a Class I-A applicant must also possess a J.D. from an ABA-approved law school. In other words, Does the phrase "at least equal to" in rule 5A(1)(b) mean "at least *the same as*" for purposes of determining educational qualifications for bar admission?

Brown denies that the educational requirement of rule 5C (i.e., an ABA-approved J.D.) must directly govern Commission decisions regarding the educational qualifications of Class I-A applicants under rule 5A. Instead, applying dictionary definitions, Brown argues that the phrase "at least equal to" should be interpreted as requiring a Class I-A applicant's educational qualifications to be at a minimum " 'like in quality, nature, or status' " to the qualifications required of Class II applicants. See brief for appellant at 12. Under this rendering, Brown contends that the Commission should have conducted a formal review of his LL.B. to determine if it is " 'at least like in quality/nature/status' " to a J.D. from an ABA-approved law school. *Id.*

The Commission asserts that educational qualifications "at least equal to" the rule 5C educational requirement mean that a

Class I-A applicant must at least possess an ABA-approved J.D. The Commission argues that a straightforward reading of rule 5A indicates that any education that does not meet the minimum requirement of rule 5C is not "at least equal to" an education that does so qualify. The Commission also argues that our precedents imply that Class I applicants must possess a J.D. from an ABA-approved law school.

The Commission encourages us to impose a strict ABA-approved J.D. requirement because the Commission lacks sufficient standards by which to judge the equivalence of programs not approved by the ABA on a case-by-case basis. There is little case law and no regulatory basis upon which the Commission might assess whether another academic degree qualifies as "at least equal to" an ABA-approved J.D. Finally, the Commission points out that a denied applicant may petition this court to waive the educational requirement; thus, the Commission believes no harm would follow if we were to set forth a clear standard by interpreting rule 5A as requiring exactly the same educational qualifications as required by rule 5C. The Commission asks this court either to hold that the educational standards for Class I applicants are identical to those for Class II applicants or to give the Commission sufficient standards to apply when making equivalence determinations regarding educational qualifications.

Although none of our previous cases are exactly on point, they do provide helpful guidance. In *In re Appeal of Dundee*, 249 Neb. 807, 545 N.W.2d 756 (1996), an out-of-state attorney applied for admission to the bar without examination as a Class I-B applicant under rule 5A(2). Class I-B applicants must have been licensed to practice law in another state for 5 of the 7 years immediately preceding application, and they must possess "educational qualifications at least equal to those required" of applicants required to take the bar examination. See rule 5A(2). The applicant in *In re Appeal of Dundee* held a J.D. from a law school not approved by the ABA and a master of laws degree from a law school approved by the ABA.

In *In re Appeal of Dundee*, we held that the term "professional degree" in rule 5C contemplates only a J.D. We reasoned that by requiring applicants to possess a J.D. from an ABA-approved

law school, we "ensure that all Nebraska lawyers receive their basic, 'core' legal education according to the minimum standards promulgated by the ABA." 249 Neb. at 810, 545 N.W.2d at 759. Although we did not precisely address the issue of whether Class I applicants under rule 5A must have the same educational qualifications as Class II applicants under rule 5C, we did apply the rule 5C requirement to a Class I-B applicant and stated that the "[e]ducational qualifications are contained in rule 5C. . . ." 249 Neb. at 809, 545 N.W.2d at 758. Moreover, as a result of our holding, we denied admission to a Class I-B applicant because he had not received a J.D. from an ABA-approved law school. Therefore, under the "at least equal to" language of rule 5A(2)(b), we have required a Class I-B applicant to have the same educational qualifications as a Class II applicant.

In *In re Application of Collins-Bazant*, 254 Neb. 614, 578 N.W.2d 38 (1998), the Commission denied a Canadian attorney's request to sit for the bar examination because she had not received a J.D. from an ABA-approved law school. Based on the clear language of rule 5C, this court concluded that "rule 5 cannot be interpreted in a way that would allow [the applicant], a graduate of a law school not approved by the ABA, to be admitted to the bar upon examination." 254 Neb. at 619, 578 N.W.2d at 42.

In summary, our precedents show that we have interpreted rule 5C strictly to mean that those applying for admission by examination must possess a J.D. from an ABA-approved law school. See, *In re Application of Gluckselig*, 269 Neb. 995, 697 N.W.2d 686 (2005); *In re Application of Collins-Bazant, supra*; *In re Appeal of Dundee, supra*. We have also applied the rule 5C educational requirement for Class II applicants to a Class I-B applicant. See *In re Appeal of Dundee, supra.*

We hold that the educational qualifications required of a Class I-A applicant are the same as the requirement found in rule 5C (i.e., a first professional degree from an ABA-approved law school). We conclude that Brown's LL.B. attained at a Canadian law school does not satisfy the requirements of rule 5A. We therefore turn to the issue of whether a waiver is appropriate in this case.

## 2. WAIVER

Brown contends that if rule 5A(1) cannot be interpreted in a manner that would allow him to be admitted to the Nebraska bar, then this court should waive the educational qualifications requirement in his case.

### (a) Commission's Role in Waiver Cases

The Commission found that Brown's Canadian LL.B. did not satisfy the educational qualifications requirement for Class I-A applicants. The Commission lacks the authority to waive this requirement. See *In re Application of Gluckselig, supra*. In *In re Application of Gluckselig*, we asked the Commission to submit a recommendation concerning waiver in cases where the Commission has denied an application. The Commission did not take a position on the question of waiver in this case, however, because it denied Brown's application prior to our decision in *In re Application of Gluckselig*.

Rule 5C requires that Class II applicants possess at the time of the examination a first professional degree (i.e., J.D.) from a law school approved by the ABA. See *In re Appeal of Dundee*, 249 Neb. 807, 545 N.W.2d 756 (1996). Class I applicants (those requesting admission without examination) are required to possess "educational qualifications at least equal to those required at the time of application for admission by examination to the bar of Nebraska." See rules 5A(1)(b) and (2)(b).

Before we discuss whether waiver is appropriate in this case, we shall review circumstances we have considered when determining whether to grant a waiver of the educational qualifications requirement. These considerations have been gathered from our three principal waiver cases: *In re Application of Gluckselig*, 269 Neb. 995, 697 N.W.2d 686 (2005); *In re Application of Collins-Bazant*, 254 Neb. 614, 578 N.W.2d 38 (1998); and *In re Appeal of Dundee, supra*. These considerations "should not be read as a 'bright line' determination" of what educational qualifications an applicant must possess to obtain a waiver. See *In re Application of Gluckselig*, 269 Neb. at 1003, 697 N.W.2d at 693. Furthermore, we have made a distinction between graduates of U.S. law schools not approved by the ABA and graduates of foreign law schools, because the ABA does not

accredit foreign law schools. See *In re Application of Collins-Bazant, supra.* Thus, these considerations apply only to cases in which the Commission has denied admission to applicants educated at foreign law schools.

### (i) Educational Background

A threshold requirement for this court's waiving of rule 5C has been that the applicant must possess a professional legal degree from a foreign law school. In *In re Application of Collins-Bazant,* the applicant held a Canadian LL.B., a graduate degree earned after 3 years of legal studies. In *In re Application of Gluckselig,* the applicant held a master's degree in law and legal science, which he had earned at a law school in the Czech Republic. We have held that a master of laws degree from a U.S. law school is not a viable substitute for an ABA-approved J.D. required under rule 5C. See *In re Appeal of Dundee, supra.*

■ When requesting a waiver, the applicant must "show that the education received at any particular school was functionally equivalent to the education provided at ABA-approved schools." *In re Application of Collins-Bazant,* 254 Neb. at 622, 578 N.W.2d at 43. Our waiver cases indicate that foreign-educated applicants provided extensive information regarding their academic background, including, among other aspects, the accreditation status of their law school, transcripts, official course descriptions, letters of recommendation from professors, and affidavits from law school officials describing the education offered at their schools.

This court has found significant whether the applicant has received education based on the English common law. In *In re Application of Collins-Bazant,* we waived rule 5C for an applicant who graduated from a foreign law school based on English common law. In *In re Application of Gluckselig,* we waived rule 5C for an applicant who graduated from a foreign law school based not on English common law, but on Roman civil law; however, we took into account that the applicant's extensive legal education included significant studies based on the common law. He spent a year of study at the University of Nebraska College of Law and the University of Michigan Law School, earning a total of 44 credit hours.

Although we have refused to make a bright-line determination regarding the legal courses required as prerequisites to a waiver, see *In re Application of Gluckselig, supra,* we have recognized certain legal courses as examples of basic, core courses deemed " 'minimally necessary to be a properly-trained attorney,' " *In re Appeal of Dundee,* 249 Neb. 807, 811, 545 N.W.2d 756, 759 (1996). These courses include civil procedure, contracts, constitutional law, criminal law, evidence, family law, torts, professional responsibility, property, and trusts and estates. The Commission should not construe this listing of courses as a "checklist," but it should consider whether an applicant's education includes exposure to a range of foundational substantive areas of law.

### (ii) Exposure to U.S. Law

We have also considered the extent to which an applicant had been exposed to U.S. law. In granting a waiver to a Canadian-educated attorney in *In re Application of Collins-Bazant,* 254 Neb. 614, 578 N.W.2d 38 (1998), we noted the applicant's efforts to become acquainted with U.S. and Nebraska law. The Commission may consider similar aspects of a foreign-educated applicant's background when making a waiver recommendation to this court.

The applicant in *In re Application of Gluckselig,* 269 Neb. 995, 697 N.W.2d 686 (2005), while enrolled in a law school in the Czech Republic, took several international law classes focusing in part on U.S. law, and he also completed a 112-page thesis which involved a comprehensive comparison of the European Union and U.S. laws on the topic of choice-of-law and forum clauses in Internet-based transactions. Further, while still enrolled in the foreign law school, the applicant studied at the University of Nebraska College of Law, earning 19 credit hours. In addition to his academic credentials, the applicant had spent several months as a clerk for two law firms in Lincoln. He had also sat for and passed the New York bar examination, and he had taken and passed the Multistate Professional Responsibility Examination. Thus, our de novo review of the record indicated that the applicant had received "significant exposure to U.S. law." *Id.* at 1002, 697 N.W.2d at 692.

### (b) Waiver in Present Case

■ Following the denial of an application and a hearing before the Commission, this court will consider a waiver of rule 5C to allow a graduate of a foreign law school based on the English common law to take the Nebraska bar examination upon proof that the education he or she received was equivalent to that for a J.D. available at an ABA-approved law school. *In re Application of Collins-Bazant, supra.* Although this pronouncement was made in a case involving an applicant seeking admission by examination, the principle remains the same for a foreign-educated applicant seeking admission without examination, because the issue is whether to waive the *educational qualifications* requirement not the *bar examination* requirement.

We are guided by certain principles when considering whether waiver of the educational qualifications requirement is appropriate. The "admission rules [are] intended to 'weed' out unqualified applicants, not to prevent qualified applicants from taking the bar." *In re Application of Gluckselig*, 269 Neb. at 1001, 697 N.W.2d at 691. See *In re Application of Collins-Bazant, supra.* Also,

> while the use of ABA approval as a criterion allows courts to evaluate an applicant's legal education effectively and expeditiously without imposing a burden on the court's resources, a court must also ensure that applicants are treated fairly, because any qualification for admission to the bar " 'must have a rational connection with the applicant's fitness or capacity to practice law.' "

254 Neb. at 621, 578 N.W.2d at 43, quoting *Bennett v. State Bar*, 103 Nev. 519, 746 P.2d 143 (1987).

This court will not apply a strict application of rule 5C if in doing so, it would operate in such a manner as to deny admission to a qualified graduate of a foreign law school arbitrarily and for a reason unrelated to the essential purpose of the rule. *In re Application of Gluckselig*, 269 Neb. 995, 697 N.W.2d 686 (2005); *In re Application of Collins-Bazant*, 254 Neb. 614, 578 N.W.2d 38 (1998).

■ When a foreign-educated attorney seeks a waiver of the educational qualifications requirement, the burden is on the

applicant to affirmatively show that his or her education, considered as a whole, was functionally equivalent to that of an ABA-approved law school, and the applicant will be responsible for the costs of providing such information. See, *In re Application of Gluckselig, supra*; *In re Application of Collins-Bazant, supra*. We now consider whether Brown has met this burden.

Our de novo review of the record before us indicates that Brown obtained a well-rounded legal education from Windsor, where he earned an LL.B. based on common-law principles. Windsor is not ABA-approved because it is a Canadian school, but its courses have been approved as part of a joint J.D.-LL.B. program with Detroit Mercy, which is an ABA-approved school.

In *In re Appeal of Dundee*, 249 Neb. 807, 811, 545 N.W.2d 756, 759 (1996), we recognized that by requiring a J.D. of bar applicants, we ensure that Nebraska lawyers have taken basic, core legal courses deemed " 'minimally necessary to be a properly-trained attorney.' " We listed as examples of such core legal courses the following: civil procedure, contracts, constitutional law, criminal law, evidence, family law, torts, professional responsibility, property, and trusts and estates. The record reveals that Brown successfully completed courses in all but two of those subjects: professional responsibility and trusts and estates. Brown's background is not completely devoid of those areas, however. The third phase of the bar admissions process in Ontario included instruction and an examination on professional responsibility and practice management, and Brown has taken and passed the Multistate Professional Responsibility Examination. Furthermore, Brown spent time in an estate planning practice group during his period of articles.

In addition to the core courses listed above, Brown successfully completed other law school staples such as administrative law, business associations, corporate law/secured transactions, debtor-creditor relations, international law, and legal writing and research. The education at Windsor also provided Brown with practical legal experience through his participation in the clinical law and advocacy program, community legal aid, and moot court. Furthermore, to gain admission to the Law Society of Upper Canada (i.e., Ontario's bar), Brown completed a mandatory 16½-month admissions process consisting of a 1-month

skills program, a 12-month apprenticeship, and a 3½-month period of instruction and examinations in core legal subjects.

Brown has educated himself on U.S. law and has demonstrated his ability as an attorney. He familiarized himself with U.S. immigration law and practiced in that field for about 2 years in Canada. He then passed the California bar examination and was admitted to the California bar in 2000. He practiced law in California for 4 years, specializing in business immigration law. Brown has practiced law as a licensed attorney for a total of approximately 7 years (3 years in Canada and 4 years in California). He is in good standing with the Ontario and California bars.

In our de novo review, we determine that Brown's education as a whole is functionally equivalent to an education received at an ABA-approved law school. When Brown's education is combined with his work experience, efforts to become acquainted with U.S. law, passing of the California bar examination, and admission to the California bar, a waiver is appropriate.

## VI. CONCLUSION

Based on a de novo review of the record, we conclude that Brown has met his burden of proving that his law school education was functionally equivalent to the education received at an ABA-approved law school. As a result, a waiver of the educational qualifications requirement is appropriate. Accordingly, we waive this requirement as it applies to Brown and will allow him to be admitted to the Nebraska State Bar Association. Having determined that a waiver is appropriate, we need not address Brown's remaining assignments of error.

APPLICATION GRANTED.