751 N.W.2d 123 (2008)
275 Neb. 1004
In re Application of David W. DOERING for Admission to the Nebraska State Bar.
No. S-34-070004.
Supreme Court of Nebraska.
June 27, 2008.
*124 Robert F. Bartle, of Bartle & Geier Law Firm, Lincoln, for applicant.
Jon Bruning, Attorney General, and Tom Stine for Nebraska State Bar Commission.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
David W. Doering graduated from Western State University College of Law (Western State) in Fullerton, California, in 1982. At the time of his graduation, Western State's law school was not approved by the American Bar Association (ABA). In 2007, Doering filed an application with the Nebraska State Bar Commission (Commission), seeking admission without examination as a Class I-A applicant.[1] The Commission denied Doering's application on the basis that he did not possess a first professional degree from a law school approved by the ABA, as required by rule 5C of the Nebraska Supreme Court Rules for Admission of Attorneys. Thereafter, at Doering's request, a hearing was held before the Commission, and Doering presented evidence regarding his educational qualifications and Western State's credentials. The Commission again denied Doering's request, and he appeals.

FACTS
Doering received a bachelor of science degree in criminal justice from the University *125 of Nebraska-Lincoln in 1977. In 1979, Doering enrolled at Western State. After successfully completing 3 years of coursework, Doering earned a juris doctor degree from Western State in 1982.
Doering's transcript shows that his first-year law school curriculum consisted of two terms of civil procedure, two terms of contracts, two terms of property, two terms of torts, and one term of criminal law. During his second and third years, Doering took courses in family law, constitutional law, media law, law office management, space law, wills and trusts, community property, education law, legal research and writing, evidence, investigative technique, remedies, the Uniform Commercial Code, agency and partnerships, corporations, criminal procedure, clinical education, and professional responsibility. The record indicates that at some point while attending Western State, Doering took the Multistate Professional Responsibility Examination (MPRE) and received a score that satisfies Nebraska's MPRE requirement.[2]
At all times relevant to this case, Western State was accredited by the Committee of Bar Examiners of the State of California and accredited by the Western Association of Schools and Colleges. However, during the time that Doering attended and eventually graduated from Western State, the law school was not accredited by the ABA.
After graduation, Doering took, but failed, bar examinations in Montana and California. In 1992, Doering sat for and passed the Georgia bar examination, and was admitted to the Georgia bar in 1992. Beginning in March 1995 and continuing until February 1996, Doering worked as a volunteer for the Georgia Indigent Defense Council. In February 1996, the felony trial division of the Georgia Indigent Defense Council made the decision to start its own office and separated from the Georgia Indigent Defense Council. The director of the felony trial division offered Doering a position with the felony trial division as a staff attorney, which Doering accepted. Doering worked as a staff attorney and was eventually promoted to senior attorney, where he remained until he moved to Nebraska in 2006.
The record reflects that Doering is currently a lawyer in good standing with the Georgia bar. Doering testified that he moved to Nebraska in 2006 in order to be closer to his parents, who were in poor health.
On April 12, 2007, Doering submitted a Class I-A application to the Commission seeking admission to the Nebraska bar without examination.[3] In a letter dated June 18, 2007, the Commission denied Doering's application because he had not received his law degree from an ABA-approved law school. Doering appealed the Commission's denial, and a hearing was held.
Doering testified and presented evidence at the hearing. Included in the evidence offered by Doering were two affidavits by Richard E. Jenkins, an associate dean and professor of law at Western State. In his affidavits, Jenkins testified to, among other things, Western State's curriculum and its accreditations. Jenkins, who graduated from Western State in 1974 and later joined the teaching faculty at Western State in 1976, testified that he is familiar with the accreditation standards of the bar examiners of the State of California and the ABA and that both accreditation *126 standards "are equal or substantially equivalent."
Attached to one of Jenkins' affidavits was an exhibit which set forth various ABA accreditation requirements as they existed in 1982. These requirements included standards relating to the law school library, the number of full-time faculty members, and faculty workload and compensation. Given these ABA standards, Jenkins opined that "[r]elative to the number of fulltime faculty ... and other requirements relative to faculty teaching loads, study and law library requirements,... Western State ... offered a program substantially similar to ABA-approved law schools."
Jenkins further averred that it was his understanding that "the single and most important reason" why Western State had not applied for accreditation with the ABA by the time Doering graduated in 1982 was because the ABA then required "through Rule 202, that a law school should be organized as a non-profit educational institution," prohibiting for-profit law schools, such as Western State, from receiving ABA accreditation. Jenkins testified that Western State did not seek ABA accreditation "until some time in approximately 1987" and that Western State "was first accredited by the ABA in the mid-1990s."
Doering presented evidence that in 1995, the Department of Justice brought an antitrust lawsuit against the ABA and obtained a consent decree under which the ABA was enjoined from "adopting or enforcing any Standard, Interpretation or Rule, or taking any action that has the purpose or effect of prohibiting a law school from ... being an institution organized as a for-profit entity."[4] Doering's evidence indicates that as a result of this ruling, the ABA removed its requirement that a law school be organized as a nonprofit educational institution in order to receive ABA accreditation.
Following this rule change, Western State applied for and received ABA accreditation. For some reason, not apparent from the record, Western State temporarily allowed its ABA accreditation to lapse. In 2005, Western State reacquired, and has maintained until the present time, provisional accreditation from the ABA. The record indicates that a school that is provisionally approved by the ABA is entitled to all the rights of a fully approved law school. After reviewing Doering's law school transcript, Jenkins testified that Doering's academic experience and course of study from 1979 to 1982 was essentially the same as the academic experience and course of study for law students who graduated from Western State in 2007.
On October 23, 2007, the Commission again denied Doering's application on the basis that he lacked a first professional degree from an ABA-approved law school. Doering now appeals to this court.

ASSIGNMENT OF ERROR
Doering assigns, restated, that the Commission erred in denying his application seeking admission to the Nebraska bar.

STANDARD OF REVIEW
[1] The Nebraska Supreme Court will consider the appeal of an applicant from a final adverse ruling of the Commission de novo on the record made at the hearing before the Commission.[5]

*127 ANALYSIS
[2,3] The Nebraska Supreme Court is vested with the sole power to admit persons to the practice of law in this state and to fix qualifications for admission to the Nebraska bar.[6] Rule 5A(1)(b) requires a Class I-A applicant, such as Doering, to have attained "educational qualifications at least equal to those required" of Class II applicants (i.e., those required to take the written examination). And Class II applicants, pursuant to rule 5C, must possess their first professional degree from an ABA-approved law school.[7] Thus, Doering must meet the ABA-approved law school requirement or, in the absence of such degree, seek a waiver of rule 5C.
[4-6] Doering concedes that Western State was not accredited by the ABA at the time he graduated in 1982. Nevertheless, Doering requests that we waive the application of the educational qualifications in rule 5C as they apply to him. This court has the power, under appropriate circumstances, to waive the application of its own rules regarding the admission of attorneys to the Nebraska bar.[8] In determining whether a waiver of the educational qualifications requirement is appropriate, we are guided by certain principles. We have explained that our "admission rules [are] intended to `weed' out unqualified applicants, not to prevent qualified applicants from taking the bar."[9] We have also noted that "exceptions should be recognized and waivers granted `"whenever it can be demonstrated that the rules operate in such a manner as to deny admission to a petitioner arbitrarily and for a reason unrelated to the essential purpose of the rule."'"[10]
Doering notes that under certain circumstances, we have waived rule 5C where a foreign-educated applicant proves that the education he or she received was equivalent to that for a juris doctor degree available at an ABA-approved law school.[11] Doering argues that given his circumstances-in particular, his allegation that Western State would have been ABA  accredited at the time of his graduation but for its proprietary status  we should extend to him, a graduate of an unaccredited United States law school, the same waiver opportunity afforded to foreign-educated applicants. This we decline to do.
[7] While we have, on occasion, granted waivers to graduates of foreign law schools, there is a critical distinction between graduates of foreign law schools and graduates of nonaccredited U.S. law schools. The ABA does not evaluate foreign law schools for accreditation; thus, there is no way for citizens of foreign countries to attend an ABA-accredited school in their own country.[12] Accordingly, *128 we reaffirm what we said in In re Application of Collins-Bazant[13]: While a strict application of rule 5C may not always be appropriate for those who attended law school outside the United States, a strict application of rule 5C is appropriate for graduates of nonaccredited U.S. law schools.
For applicants who graduate from U.S. law schools, we have chosen, as reflected in rule 5C, to rely upon the ABA accreditation process as an objective determination of the educational environment for prospective attorneys. The ABA's process for evaluating law schools is extensive and involves many detailed standards for law school organization and administration, the educational programs offered, the faculty, admissions, the library, and the law schools' actual physical facilities.[14] The ABA's standards are an appropriate, effective, and objective means of measuring the quality of a law school and "provide assurance that applicants to the bar `have experienced a generally uniform level of appropriate legal education.'"[15]
In the present case, Doering would have us evaluate nonaccredited U.S. law schools on a case-by-case basis to determine whether a particular school, at a certain point in time, provided a legal education that was substantially equivalent to that from an ABA-accredited law school. But such a case-by-case approach into the individual qualifications and standards of every nonaccredited U.S. law school, whenever a graduate from that school applies to the bar, would impose upon this court an unreasonable and unnecessary burden. The resources of this court are neither sufficient nor suited to the task of conducting such individualized waiver determinations. Furthermore, we believe that for us to evaluate U.S. law schools on a case-by-case approach would yield results far less reliable than those of the ABA, and would invite challenges as to the quality of such determinations.[16] Simply stated, the ABA is best equipped to perform the function of accrediting law schools, and we will continue to rely on its determinations.
The circumstances in the present case illustrate the difficulty we would face if we were to grant waivers for rule 5C on a case-by-case basis, rather than relying on the ABA's accreditation. Here, Doering claims that the education he received at Western State from 1979 until 1982 was functionally equivalent to that of an ABA-approved law school. Yet Doering offered little by way of comprehensive evidence to support this claim. The evidence Doering did offer suggested that the only reason Western State was not ABA-accredited at the time he graduated in 1982 was because of its proprietary status. However, other courts have considered Western State's accreditation history, and their opinions suggest that, from June 1977 until approximately July 1981, a proprietary law school could have applied for and received provisional ABA accreditation if the school substantially complied with all other standards.[17] But despite being invited to do so, Western State did not apply, and when Western State did eventually apply in 1987, it was denied accreditation for reasons other than its proprietary status.[18]
*129 Doering's request for a waiver does not explain or address these inconsistent findings and relies solely on the limited evaluation permitted by the evidence he adduced at the hearing. This evaluation is, necessarily, less detailed and reliable than the searching inquiry of the ABA accreditation process. The ABA has the resources to conduct an examination that is far more credible than any that could be performed by this court or an applicant for admission to our bar. And to evaluate law schools case by case, based on the limited evidence adduced by a particular applicant, would risk inconsistency and unfairness to students who were otherwise identically situated. As we stated in In re Appeal of Dundee,[19] "[i]f we do not apply rule 5 uniformly rather than on a case-by-case basis, it will cease to operate as a rule at all."
[8] It is for precisely these reasons that we have chosen, in rule 5C, to rely on the ABA's well-founded, consistent, and definitive conclusions. Therefore, we continue to hold that waiver of rule 5C is not available to graduates of nonaccredited U.S. law schools. Because Western State was not ABA-accredited at the time Doering graduated, we affirm the decision of the Commission to deny his application for admission.

CONCLUSION
[9] To evaluate an applicant's legal education effectively, consistently, and expeditiously, we have elected to utilize the accreditation resources of the ABA. While waiver of rule 5C may, in certain circumstances, be appropriate for graduates of foreign law schools, rule 5C will not be waived for graduates of non-accredited U.S. law schools. At the time Doering graduated, Western State was not ABA-accredited; therefore, his application for admission to the Nebraska bar should be denied. The decision of the Commission is affirmed.
DENIAL OF APPLICATION AFFIRMED.
NOTES
[1] See Neb. Ct. R. for Adm. of Attys. 5A(1) (rev.2005).
[2] See, rule 5A(1)(c); Neb. Ct. R. for Adm. of Attys. 16 (rev.2004).
[3] See rule 5A(1)(b).
[4] U.S. v. American Bar Ass'n, 934 F.Supp. 435, 436 (D.D.C.1996).
[5] In re Application of Brown, 270 Neb. 891, 708 N.W.2d 251 (2006); Neb. Ct. R. for Adm. of Attys. 15 (rev.2000).
[6] In re Application of Budman, 272 Neb. 829, 724 N.W.2d 819 (2006). See Neb. Const. art. II, § 1, and art. V, §§ 1 and 25.
[7] See In re Application of Brown, supra note 5.
[8] See In re Application of Collins-Bazant, 254 Neb. 614, 578 N.W.2d 38 (1998).
[9] In re Application of Gluckselig, 269 Neb. 995, 1001, 697 N.W.2d 686, 691 (2005).
[10] In re Application of Collins-Bazant, supra note 8, 254 Neb. at 621, 578 N.W.2d at 43.
[11] See, In re Application of Budman, supra note 6; In re Application of Brown, supra note 5; In re Application of Gluckselig, supra note 9; In re Application of Collins-Bazant, supra note 8.
[12] See In re Application of Collins-Bazant, supra note 8. See, also, In the Matter of Tocci, 413 Mass. 542, 600 N.E.2d 577 (1992); Application of Macartney, 163 Ariz. 116, 786 P.2d 967 (1990).
[13] In re Application of Collins-Bazant, supra note 8.
[14] See Fla. Bd. of Bar Ex'mrs re Mass. School, 705 So.2d 898 (Fla. 1998).
[15] In the Matter of Tocci, supra note 12, 413 Mass. at 548, 600 N.E.2d at 581.
[16] See Appeal of Kartorie, 486 Pa. 500, 406 A.2d 746 (1979).
[17] See, Application of Urie, 617 P.2d 505 (Alaska 1980); In re Nort, 96 Nev. 85, 605 P.2d 627 (1980); Application of Hansen, 275 N.W.2d 790 (Minn. 1978).
[18] See, In re Lewis, 86 S.W.3d 419 (Ky.2002); Application of Urie, supra note 17; In re Nort, supra note 17; Application of Hansen, supra note 17.
[19] In re Appeal of Dundee, 249 Neb. 807, 812, 545 N.W.2d 756, 760 (1996).