*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 6**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JAMES J. KELLY,
*Petitioner,*

*v.*

UTAH STATE BAR,
*Respondent.*

No. 20160094
Filed February 6, 2017

On Direct Appeal

Attorneys:

James L. Barnett, Darren G. Reid, Ryan R. Jibson, Salt Lake City,
for petitioner

Elizabeth A. Wright, Salt Lake City, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE HIMONAS, and JUSTICE PEARCE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶ 1   This case requires us to establish for the first time a standard for evaluating petitions for waiver of the admission rules set forth in the Rules Governing the Utah State Bar (the Utah Rules Governing Bar Admission). Petitioner James Kelly graduated from the University of Toronto Faculty of Law (Toronto law school) in June 2000 and practiced law for over a decade in Massachusetts. He now asks us to waive rule 14-704(c)(5) of the Utah Rules Governing Bar Admission, which requires a graduate of a foreign law school to obtain additional education at an ABA-approved law school before

becoming eligible to take the Utah bar examination.[1] We conclude that waiver of our rules is appropriate only in extraordinary cases where the applicant demonstrates by clear and convincing evidence that the purpose of the rule for which waiver is sought has been satisfied. Because those conditions are met in this case, we grant Mr. Kelly's petition for waiver.

## Background

¶ 2 Petitioner James Kelly graduated from Toronto law school in June 2000, receiving an LL.B. Toronto law school is located in Toronto, Ontario, Canada, and, because it is a foreign law school, it is not accredited by the American Bar Association (ABA).[2] Even though unaccredited by the ABA, the law school is accredited by the Law Society of Upper Canada and considered the top-ranked law school in Canada.[3] Following graduation, Mr. Kelly passed the Massachusetts bar examination and was admitted in January 2001 to practice law in Massachusetts.[4] Initially, he worked for Testa, Hurwitz & Thibeault LLP, but eventually he became a partner at Morse, Barnes-Brown & Pendleton P.C. (Morse), developing "a highly specialized legal practice focused on federal securities regulation and private investment fund formation."

¶ 3 In July 2013, Mr. Kelly moved with his family to Utah, intending to seek admission to the Utah State Bar (Bar) in order to help Morse open a Salt Lake City office. Throughout 2013 he worked

---

[1] Mr. Kelly filed his petition in April of 2016. On May 1, 2016, we amended our Rules Governing the Utah State Bar. The rule at issue here was renumbered without substantive change. *See* Utah Sup. Ct. R. Prof'l Practice 14-703(b)(6) (2012). Accordingly, for ease of reference, we refer to the most recent version of the rules throughout this opinion.

[2] The ABA does not evaluate foreign law schools for approval. *See* Am. Bar Ass'n, Standards and Rules of Procedure for Approval of Law Schools, 2015, at vii.

[3] Toronto law school is also ranked 19th worldwide by the QS World University Rankings.

[4] Massachusetts, unlike Utah, allows graduates of Toronto law school "to sit for the general bar examination or apply for admission on motion on the same basis as graduates of law schools approved by the American Bar Association." Mass. Bd. of Bar Exam'rs, R. Prof'l Conduct VI.7.

from home for Morse clients who were not located in Utah. In March 2014, Mr. Kelly contacted the Bar about submitting an application and was told he would need to meet the foreign law school graduate education requirements to be eligible for the bar exam.

¶ 4 Utah allows only two categories of persons to take the bar: student applicants and attorney applicants.[5] Rule 14-704 of the Utah Rules Governing Bar Admission prescribes the standards attorney applicants must meet. This rule distinguishes between attorney applicants from unapproved law schools[6] and attorney applicants from foreign law schools.[7] As an attorney applicant from a foreign law school — Toronto law school — Mr. Kelly is required to satisfy the requirements outlined in 14-704(c).

¶ 5 Most relevant here, rule 14-704(c)(5) requires Mr. Kelly

> to establish by clear and convincing evidence that . . . he[] has completed with a minimum grade of "C" or its passing equivalent no less than 24 semester hours, or a corresponding amount in quarter hours, at an Approved Law School, within 24 consecutive months. The 24 semester hours must include no less than one course each in a core or survey course of constitutional law, civil procedure, criminal procedure or criminal law, legal ethics and evidence.[8]

When Mr. Kelly inquired about obtaining a waiver of this rule, the Bar informed him that only the Utah Supreme Court could grant a waiver and that he could not petition the court to request a waiver until he had submitted an application.

¶ 6 Mr. Kelly did not immediately act on this information and submit his application, because his health sharply deteriorated. Eventually, Mr. Kelly was forced to undergo surgery in February 2015 to address his condition. The surgery was successful, and by March 2015 he began to work on a more consistent basis. Six months

---

[5] *See* UTAH SUP. CT. R. PROF'L PRACTICE 14-701, et seq.; *cf.* UTAH SUP. CT. R. PROF'L PRACTICE 14-701, et seq. (2012).

[6] *See id.* 14-701(ll) (2016) (defining "Unapproved Law School" to mean "a law school that is not fully or provisionally approved by the ABA").

[7] *Cf. id.* 14-703(b) (2012) and 14-704 (2012).

[8] *Id.* 14-704(c)(5) (2016).

later, in September 2015, Mr. Kelly left Morse and joined Holland & Hart LLP.[9] He thereafter submitted his bar application in time for the fall 2015 deadline. And on February 2, 2016, the Bar formally denied Mr. Kelly's bar application because he had not satisfied rule 14-704(c)(5)'s education requirement for an attorney applicant from a foreign law school. A week and a half later, on February 12, 2016, Mr. Kelly petitioned this court to waive rule 14-704(c)(5)'s education requirement. We have jurisdiction to hear this matter pursuant to article VIII, section 4 of the Utah Constitution and section 78A-3-102(2) of the Utah Code.

## Analysis

¶ 7  Mr. Kelly, as an attorney applicant with a degree from Toronto law school in Ontario, Canada, seeks a waiver of rule 14-704(c)(5) of the Utah Rules Governing Bar Admission, which requires a graduate of a foreign law school to obtain additional education at an ABA-approved law school to be eligible to take the Utah bar examination. Article VIII, section 4 of the Utah Constitution empowers this court to "govern the practice of law [in Utah], including admission to practice." Pursuant to that constitutional power, "the authority to waive one of our admissions rules rests solely with this court."[10] To evaluate Mr. Kelly's petition, we must articulate for the first time a standard for evaluating petitions for wavier of our admission rules. After articulating the appropriate standard, we conclude that Mr. Kelly merits a waiver of rule 14-704(c)(5) of the Utah Rules Governing Bar Admission.

### I. We Grant Petitions for Waiver of the Utah Rules Governing Bar Admission Only in Extraordinary Cases

¶ 8  We have adopted the Utah Rules Governing Bar Admission as "predictable, objective standard[s]" for measuring an applicant's competence to practice law in this jurisdiction.[11] Generally, we

---

[9] Though Mr. Kelly had a webpage at Holland & Hart, the page clearly indicated that he is "admitted to practice only in Massachusetts; he is not admitted to practice in Utah."

[10] *In re Anthony*, 2010 UT 3, ¶ 12, 225 P.3d 198; *see also* UTAH SUP. CT. R. PROF'L PRACTICE 14-702(f) ("Waiver of any rule may only be obtained by petitioning the Supreme Court.").

[11] *Spencer v. Utah State Bar*, 2012 UT 92, ¶ 17, 293 P.3d 360 (noting that the active practice requirement "provides a predictable, objective standard by which the Bar may review applications for admission").

strictly enforce our admission rules, recognizing that departing from the rules "would require us to evaluate the credentials of every [applicant] who seeks a waiver."[12] So we will depart from these standards and grant a waiver only in the most extraordinary cases where "strict adherence to the rules [will] undermine" the goal of ensuring "that the people of this state may rely on admitted attorneys for competent and ethical representation."[13]

¶ 9   In our prior cases, we have exercised our authority to waive an admission rule on only one occasion, *In re Anthony*,[14] and in that case "we decline[d] to set out any specific standard for evaluating petitions for waiver,"[15] because the attorney applicant provided three decades of competent, unblemished legal practice in California and would have undoubtedly satisfied the standard we articulated, whatever its precise scope.[16] We conclude that Mr. Kelly presents a somewhat different case, requiring us to identify when we will exercise our authority to grant a petition for waiver.

¶ 10 Specifically, we hold that a waiver is appropriate only in extraordinary cases where an applicant demonstrates by clear and convincing evidence that the purpose of a particular rule contemplated for waiver has been satisfied. Though we have not previously articulated this standard, it is supported by our admission rules and precedent.[17] Further, in propounding this

---

[12] *Id.*

[13] *In re Anthony*, 2010 UT 3, ¶ 15, 225 P.3d 198.

[14] 2010 UT 3.

[15] *Id.* ¶ 16.

[16] *See id.*

[17] *See* UTAH SUP. CT. R. PROF'L PRACTICE 14-704(c) ("The burden of proof is on the Applicant to establish by clear and convincing evidence that she or he" has satisfied the rules governing admission.); *see also In re Anthony*, 2010 UT 3, ¶ 15 ("And where the goal of ensuring competent representation would not be advanced by a strict application of the rules governing admission, we have contemplated that the rules may be waived in *appropriate* cases." (emphasis added)); *Spencer*, 2012 UT 92, ¶¶ 16–17, (considering the particular purpose of the active practice requirement and concluding that granting a waiver of that requirement would not "serve[] the rule's purpose"); *In re Gobelman*, 2001 UT 72, ¶¶ 4–5, 31 P.3d 535 (declining to grant a waiver to an attorney applicant because his

(Continued)

standard, we emphasize that it is a high bar and that we have wide discretion to determine when a case is truly extraordinary.

¶ 11 In assessing whether a particular case is extraordinary, we will not merely consider whether an applicant has satisfied the purpose of a particular rule—which may be narrow. Instead, we will consider more globally an applicant's competence to practice law. Our admission rules seek "to protect the citizens of Utah by ensuring . . . that the people of this state may rely on admitted attorneys for competent and ethical representation."[18] We will not waive a rule and pave the way for an applicant to practice law in this state unless we are satisfied that the applicant possesses the needed skill, knowledge, and ability to ethically represent Utah citizens.[19]

¶ 12 In articulating this standard, we reemphasize that we hold absolute discretion in deciding when to waive one of our admission rules. Future petitioners are on notice that we will not open the courthouse doors to grant waivers as a more convenient alternative to compliance with the rules. The admission rules stand as important gatekeepers that, in the majority of cases, accurately gauge an applicant's competence to practice law in this jurisdiction. So we may decline to waive our rules whenever we determine a petition does not present an extraordinary case and require the applicant to demonstrate his competence by satisfying the rule. A guiding star of this analysis is that the applicant's background and experience must distinguish him from other applicants to merit waiver. Applying this standard here, we grant Mr. Kelly a waiver of rule 14-704(c)(5).

## II. We Grant Mr. Kelly's Petition for Waiver of Rule 14-704(c)(5) of the Utah Rules Governing Bar Admission

¶ 13 As noted above, Mr. Kelly asks us to waive rule 14-704(c)(5). We will not waive this rule unless his case is extraordinary and he demonstrates by clear and convincing evidence that he has satisfied the purposes of the rule. Rule 14-704(c)(5) requires Mr. Kelly

---

position as a clerk at a district court in Salt Lake City did not qualify as being "substantially and lawfully engaged in law practice" and therefore did not satisfy the particular rule).

[18] *In re Anthony*, 2010 UT 3, ¶ 15 (citation omitted).

[19] *Id.* ¶ 16 (waiving the ABA-accredited-law-school requirement for an attorney who had clearly established his competence to practice law in this jurisdiction).

> to establish by clear and convincing evidence that . . . he[] has completed with a minimum grade of "C" or its passing equivalent no less than 24 semester hours, or a corresponding amount in quarter hours, at an Approved Law School, within 24 consecutive months. The 24 semester hours must include no less than one course each in a core or survey course of constitutional law, civil procedure, criminal procedure or criminal law, legal ethics and evidence.[20]

The manifest purpose of this rule is to ensure that attorneys admitted to practice in this state have been sufficiently educated in the identified areas of U.S. law to provide competent and ethical representation.

¶ 14 In evaluating whether he satisfies the purpose of this rule, Mr. Kelly asks us to adopt a test developed by the Nebraska Supreme Court in evaluating waiver petitions of education requirements for applicants from foreign law schools.[21] Specifically, he asks us to consider (1) whether "the education [he] received at [Toronto law school] was functionally equivalent to the education provided at ABA-approved schools;" and (2) "the extent to which [he] ha[s] been exposed to U.S. law."[22]

¶ 15 In this case, we believe both factors provide common sense guideposts for evaluating whether an attorney applicant from a foreign law school has satisfied the purpose of rule 14-704(c)(5).[23] As

---

[20] UTAH SUP. CT. R. PROF'L PRACTICE 14-704(c)(5).

[21] *See In re Brown*, 708 N.W.2d 251 (Neb. 2006); *cf. In re Budman*, 724 N.W.2d 819 (Neb. 2006).

[22] *In re Brown*, 708 N.W.2d at 259.

[23] We note, however, that in evaluating whether an applicant has demonstrated by clear and convincing evidence that he has satisfied the purpose of a particular rule, we do not limit our review to only certain factors. Because we have a "constitutional obligation to control the practice of law," *In re Gobelman*, 2001 UT 72, ¶ 9, 31 P.3d 535, in a manner that protects the citizens of this state, we may review the entire record to ensure that an applicant's experience and conduct demonstrates that the purposes of a particular rule are satisfied.

to the first factor,[24] Mr. Kelly argues that his education at Toronto law school is "functionally equivalent to the education provided at ABA-approved schools."[25] He notes that it is accredited by the Law Society of Upper Canada and is ranked 19th worldwide by the QS World University Rankings. And as a school rooted in the English common law,[26] he claims that it provided him with instruction in the core courses identified in rule 14-704—constitutional law, civil procedure, criminal law, criminal procedure, legal ethics,[27] and evidence[28]—receiving grades of "B" or better in each course. Though these courses undoubtedly focused on Canadian law, Mr. Kelly also claims that they highlighted cases from U.S. constitutional, criminal, and evidentiary law.

---

[24] While we have noted that "[r]equiring graduation from an [ABA-]approved law school is a highly efficient way of preliminarily evaluating competence," *In re Fox*, 2004 UT 20, ¶ 17, 89 P.3d 127, "there is a critical distinction between graduates of foreign law schools and graduates of [un]accredited U.S. law schools." *In re Doering*, 751 N.W.2d 123, 127 (Neb. 2008). Foreign law schools are not evaluated by the ABA, whereas U.S. law schools are. *See* AM. BAR. ASS'N, STANDARDS AND RULES OF PROCEDURE FOR APPROVAL OF LAW SCHOOLS, 2015–2016, at vii. So when a U.S. law school fails to achieve ABA accreditation, it may serve as positive evidence of some deficiency, whereas we learn very little about a foreign law school merely by recognizing that it is unaccredited by the ABA.

[25] *In re Brown*, 708 N.W.2d at 259 (citation omitted).

[26] *See* UTAH SUP. CT. R. PROF'L PRACTICE 14-704(c)(1) (requiring an applicant to have "graduated from a Foreign Law School in a country where principles of English common law form the predominant basis for that country's system of jurisprudence"); *see also In re Brown*, 708 N.W.2d at 259 ("This court has found significant whether the applicant has received education based on the English common law.").

[27] The civil procedure and perspectives on law courses at the Toronto law school apparently cover legal ethics. Mr. Kelly received a grade of "B" or better in both courses.

[28] *Cf.* UTAH SUP. CT. R. PROF'L PRACTICE 14-704(c)(5) (requiring an applicant to take "a core or survey course of constitutional law, civil procedure, criminal procedure or criminal law, legal ethics and evidence").

¶ 16 Even though he received his education from a highly ranked school rooted in English common law, we cannot conclude on the available evidence that Toronto law school provides an education that is functionally equivalent to the education provided at an ABA-approved law school. Mr. Kelly did not receive the same extensive instruction in U.S. law that a graduate from an ABA-approved law school would receive. To be sure, he did focus on a legal corpus that, like U.S. law, derives from the same parent—English common law. And this corpus may have provided Mr. Kelly with legal knowledge and skills bearing a resemblance to U.S. law.[29] But this information alone does not establish by clear and convincing evidence that the education he received at Toronto law school was "functionally equivalent to the education provided at ABA-approved schools."[30]

¶ 17 In concluding that we cannot, based on the facts provided by Mr. Kelly, conclude that Toronto law school provides a functionally equivalent education, we note the inherent difficulty this court faces in reviewing the precise nature and quality of the education offered by foreign law schools. We lack the resources needed to make a full and accurate determination of an applicant's educational experience in the absence of detailed record.[31] Future petitioners seeking waiver of this rule would be well advised to provide official course descriptions for each course taken or affidavits from professors or administrators describing the education offered at their schools, particularly that focused on U.S. law.[32] But

---

[29] *Jia v. Bd. of Bar Exam'rs*, 696 N.E.2d 131, 136 (Mass. 1998); *see also id.* at 136–37 (concluding that an applicant from a Chinese law school who had received a master's degree of comparative law and a doctor of juridical science from Tulane law school had not received a functionally equivalent education because at Tulane the applicant "studied . . . almost exclusively [] his primary interest, international business transactions" and completed only one core course "required of a juris doctor candidate . . . contracts").

[30] *In re Brown*, 708 N.W.2d at 259 (citation omitted).

[31] *In re Fox*, 2004 UT 20, ¶ 17 ("Requiring graduation from an [ABA-]approved law school is a highly efficient way of preliminarily evaluating competence.").

[32] *See In re Brown*, 708 N.W.2d at 259 ("Our waiver cases indicate that foreign-educated applicants provided extensive information regarding their academic background, including, among other

(Continued)

for some petitioners, the second factor in our analysis of rule 14-704(c)(5)—an applicant's exposure to U.S. law—may compensate for deficiencies in the record regarding the nature and quality of the education afforded by a foreign law school.

¶ 18 As for the second factor here, the record provides clear and convincing evidence that Mr. Kelly has been thoroughly exposed to U.S. law. After graduating from Toronto law school in 2000, he passed the Massachusetts bar examination in 2001 and practiced law in that jurisdiction until 2013. During that time, he developed "a highly specialized legal practice focused on federal securities regulation and private investment fund formation." His experience clearly shows that he has been exposed to U.S. law, thereby showing that he satisfied the purpose of rule 14-704(c)(5).

¶ 19 But as noted above, merely satisfying the purpose of a rule is not enough. We will grant waivers only in extraordinary cases. To determine whether a petition for waiver is extraordinary, we look to the totality of the circumstances. Under this standard, Mr. Kelly's circumstances merit waiver of rule 14-704(c)(5). Taken together, his education and legal experience not only satisfy the purpose of this particular rule, but also show more globally that he has the skills, knowledge, and ability to ethically represent clients in this state. He attended an internationally recognized law school in Canada, passed the Massachusetts bar examination, and practiced in Massachusetts without incident for over ten years in a highly complex field of law. This case is, we believe, similar to the attorney applicant from an unapproved law school in *Anthony*, who demonstrated his competence to practice law in this jurisdiction by providing three decades of competent legal representation in California, which led us to waive the education requirement applicable to graduates from unapproved law schools.[33]

---

aspects, the accreditation status of their law school, transcripts, official course descriptions, letters of recommendation from professors, and affidavits from law school officials describing the education offered at their schools.").

[33] *In re Anthony*, 2010 UT 3, ¶ 16, 225 P.3d 198. The fact that the attorney in *Anthony* graduated from an unapproved law school reinforces this conclusion. As noted above, *supra* ¶ 2 n.1, the ABA evaluates only U.S. law schools, so a failure to obtain accreditation may serve as positive evidence of educational deficiencies. In this case, Mr. Kelly has graduated from a foreign law school that appears to provide a well-rounded legal education.

¶ 20 Further, our conclusion that Mr. Kelly presents an appropriate case for waiver is reinforced by another consideration. Our rules already permit attorney applicants from unapproved law schools[34] to sit for the bar examination when they "ha[ve] been Actively and lawfully engaged in the Full-time Practice of Law in one or more [U.S.] jurisdictions where licensed for any ten of the eleven years immediately preceding the filing of the application."[35] It is not a large leap to recognize that an attorney applicant from a highly ranked foreign law school who has recently practiced law in a U.S. state for over ten years should likewise be deemed to meet the education requirements necessary to sit for the bar examination.[36] Our conclusion in this regard is reinforced by the recognition that Massachusetts allows Toronto law school's graduates to "sit for the general bar examination or apply for admission on motion on the same basis as graduates of law schools approved by the American Bar Association."[37]

¶ 21 Because Mr. Kelly's unique background and experience distinguishes him from other applicants—a guiding star in our analysis[38]—waiver is appropriate. We hold that where an attorney has graduated from a highly regarded foreign law school that is rooted in the English common law, and has been actively, lawfully, and *recently* engaged in the full-time practice of law for over ten years, we will grant a waiver of rule 14-704(c)(5). This waiver does not guarantee Mr. Kelly's admission to the Utah State Bar. It only provides him with the opportunity to sit for the bar examination and demonstrate he possesses the basic legal knowledge and skill needed to practice in this jurisdiction.[39]

---

[34] *See* UTAH SUP. CT. R. PROF'L PRACTICE 14-701(ll) (defining "Unapproved Law School" to mean "a law school that is not fully or provisionally approved by the ABA").

[35] *Id.* 14-704(b)(3).

[36] While Mr. Kelly cannot show that he has practiced law full time for ten out of the last eleven years due to his health problems, the recent nature of his practice still persuades us to provide a waiver.

[37] MASS. BD. OF BAR EXAM'RS, R. PROF'L CONDUCT VI.7.

[38] *See supra* ¶ 12.

[39] We note that the Bar asks us to deny Mr. Kelly's petition because he engaged in the unauthorized practice of law in this jurisdiction from May 2014 until February 2016. In the Bar's view, we

(Continued)

**Conclusion**

¶ 22 Mr. Kelly satisfies the purpose of rule 14-704(c)(5) of the Utah Rules Governing Bar Admission and has distinguished himself from other applicants as clearly and convincingly qualified for a waiver. He graduated from a top-ranked foreign law school, Toronto law school, and has demonstrated his ability to competently represent clients by recently practicing law for over ten years in Massachusetts. We therefore grant him waiver of rule 14-704(c)(5) of the Utah Rules Governing Bar Admission.

---

should consider the character and fitness of an applicant as part of our standard for evaluating waiver petitions. In response, we reiterate that we have wide discretion to consider all relevant evidence when evaluating waiver petitions. An underlying assumption of our review of a waiver petition is that an applicant seeking waiver is in good standing with this state bar, and the bar of any jurisdiction where he is admitted to practice. Waiving an admission requirement for an applicant who has a confirmed ethics violation in this jurisdiction that he *has not remedied* with the state bar would undermine the very purpose of the admission rules by failing to ensure that admitted attorneys will provide "competent and *ethical* representation" to citizens of this state. *In re Anthony*, 2010 UT 3, ¶ 15 (emphasis added) (citation omitted). But where an applicant, like Mr. Kelly, has acknowledged his wrongdoing and satisfied the corrective action required by the Bar to remedy the violation, it would be unfair to deny waiver solely on the basis of a past violation. Our conclusion in this regard is reinforced by the fact that, even after we have waived rule 14-704(c)(5), Mr. Kelly must still satisfy all the character and fitness requirements before being admitted to practice in this state.