IN RE APPEAL OF MARK WAYNE DUNDEE FOR ADMISSION TO THE NEBRASKA STATE BAR ASSOCIATION.
MARK WAYNE DUNDEE, APPELLANT, V. NEBRASKA STATE BAR ASSOCIATION, APPELLEE.

545 N.W.2d 756

Filed April 12, 1996.   No. S-34-950003.

Mark Wayne Dundee, pro se.

Amy L. Longo, of Ellick, Jones, Buelt, Blazek & Longo, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

This is an appeal from a decision of the Nebraska State Bar Commission denying the application of Mark Wayne Dundee for admission to the Nebraska State Bar. Dundee is an attorney applicant for admission; the state bar commission denied his application because Dundee had not met the educational requirements of the Nebraska Supreme Court Rules for Admission of Attorneys. Following our de novo review on the record, we affirm.

Dundee seeks admission to the Nebraska State Bar pursuant to rule 5A(2) of the Nebraska Supreme Court Rules for Admission of Attorneys (rev. 1996), which reads in pertinent part as follows:

Class I–B applicants who may be admitted to practice in Nebraska upon approval of a proper application are those:

(a) who have been licensed in the practice of law in another state, territory, or district of the United States preceding application for admission to the bar of Nebraska and have actively and substantially engaged in the practice of law in another state, territory, or district of the United States for 5 of the preceding 7 years immediately preceding application for admission, and

(b) who at the time of their admission had attained educational qualifications at least equal to those required at the time of application for admission by examination to the bar of Nebraska.

Educational qualifications are contained in rule 5C of the Nebraska Supreme Court Rules for Admission of Attorneys, to wit:

Educational Qualifications . . . . Every applicant must have received at the time of the examination a professional degree from a law school approved by the American Bar Association. The standards for approval which must be met are set forth in Appendix B and are incorporated here by reference. . . . An applicant without a degree from an approved law school shall be permitted to take the examination if such applicant will receive a degree from an approved law school within 60 days after the date of the examination taken.

Dundee earned his juris doctor degree in 1987 from Western State University, a state accredited and regionally accredited law school in California that has not been approved by the American Bar Association (ABA). In 1989, he received a master of laws (LL.M.) degree in taxation from the University of San Diego School of Law, an ABA–approved law school. Dundee contends that his LL.M. degree qualifies as the "professional degree" required in rule 5C and that because his LL.M. degree was conferred by an ABA–approved institution, he has met the requirements for admission to the Nebraska State Bar.

The issue before this court, therefore, is whether a "professional degree" contemplates only a juris doctor degree

or, rather, contemplates any degree conferred by a law school. Dundee urges a liberal construction of "professional degree," arguing that some other jurisdictions accept substitutes for a juris doctor degree from an ABA–approved law school. Indeed, Dundee apparently has qualified for admission to the bars of Michigan, Indiana, and the District of Columbia. It is because some other jurisdictions admit products of non–ABA–approved schools to practice that Dundee contends that he has "satisfied the statutory admission requirements as set forth in the Nebraska Court Rules for Admission of Attorneys and should thereby be admitted to the practice of law in the state of Nebraska." Brief for appellant at 9.

The bar admission practices of other states, and the policies behind those practices, do not govern admission practices in Nebraska. This court, and only this court, is invested with the power to admit persons to the practice of law and to fix qualifications for admission to the Nebraska bar. *In re Application of Majorek*, 244 Neb. 595, 508 N.W.2d 275 (1993). See Neb. Const. art. II, § 1, and art. V, §§ 1 and 25. This court thus has the responsibility to adopt and implement systems to protect the public and to safeguard the justice system by assuring that those admitted to the bar are of such character and fitness as to be worthy of the trust and confidence such admission implies. *In re Application of Majorek, supra.* We must determine the outcome of Dundee's appeal by what is right for Nebraska, not what may be right for another jurisdiction.

While the use of "professional degree" rather than "first professional degree" may have appeared to be a loophole through which graduates of non–ABA–approved juris doctor programs could gain access to the Nebraska bar, we hold today that "professional degree" contemplates only a juris doctor degree. This is the only means by which this court can ensure that all Nebraska lawyers receive their basic, "core" legal education according to the minimum standards promulgated by the ABA. See Neb. Ct. R. for Adm. of Attys., appendix B (rev. 1996). Accord *Matter of Adams*, 102 N.M. 731, 733, 700 P.2d 194, 196 (1985) (finding that a rule promulgating educational requirements for bar admission "not only promotes the licensing of adequately trained attorneys, it also provides for a uniform

and measurable standard by which to evaluate all applicants"). Notably, appendix B to the rules for admission of attorneys sets forth the standards for approval of schools conferring the professional degree required by rule 5C; those standards refer only to juris doctor degree curricula.

Unlike a juris doctor degree program, programs conferring LL.M. degrees are not the subject of any qualitative standards. Were this court to recognize an LL.M. degree as sufficient for the educational requirements in rule 5C, we would be compelled to undertake our own qualitative review of each LL.M. program. The benefits of conducting a school–by–school review of LL.M. curricula do not justify the expense of court resources. Accord *Application of Hansen*, 275 N.W.2d 790, 796 (Minn. 1978) ("[w]e have neither the time nor the expertise to investigate individually the special training of an applicant or the program offered by specific law schools, and any attempt by us to do so would be inefficient and chaotic").

Even beyond the lack of regulation over LL.M. programs, this court could not assume that an LL.M. degree compensates for any deficiencies in a juris doctor education because of the qualitative differences between these degrees. In considering whether to accept a graduate degree in law from an ABA–approved school in lieu of an accredited juris doctor degree, the Supreme Court of Florida noted that

[a] Master's degree (LL.M.) usually involves only a one–year program of combined course work and research; a Doctorate of Juridical Sciences (S.J.D.) is a graduate academic research degree revolving around advanced publishable work; and a Master's in Comparative Law (M.C.L.) is primarily for foreign–educated lawyers. None of the three degrees . . . is based upon the core of courses we deem as minimally necessary to be a properly–trained attorney.

*Florida Bd. of Bar Examiners in re Hale*, 433 So. 2d 969, 972 (Fla. 1983).

This reasoning is persuasive. Dundee's only exposure to an ABA–approved school was through an unregulated program focusing exclusively on taxation. While the LL.M. program offered at the University of San Diego School of Law may be

academically rigorous, it is not an ABA–approved juris doctor program, nor is it a viable substitute. See, e.g., *In Matter of Bar Admission of Altshuler*, 171 Wis. 2d 1, 6, 490 N.W.2d 1, 3 (1992) (quoting policy of ABA Council of the Section of Legal Education and Admissions to the Bar that " 'no graduate degree in law is or should be a substitute for the professional degree in law (J.D.) and should not serve as the same basis as the J.D. degree does for bar admission purposes' "). The required coursework for an LL.M. in taxation does not include civil procedure, contracts, constitutional law, criminal law, evidence, family law, torts, professional responsibility, property, and trusts and estates. Since Western State University School of Law, Dundee's alma mater, operates outside the regulatory reach of the ABA, there is no guarantee that Western State offers the requisite instruction in these subjects.

While a lawyer should be commended for pursuing graduate degrees in specialized areas of the law, the juris doctor is the professional degree that guarantees to Nebraska clients a certain minimum understanding of the law. We will not construe "professional degree" to permit a loophole in a rule designed to protect the public from incompetent or inadequately educated attorneys. That Dundee has practiced law in Indiana for several years and has earned a host of degrees and certificates in various fields is of no matter. If we do not apply rule 5 uniformly rather than on a case–by–case basis, it will cease to operate as a rule at all.

Dundee argues that he relied on the state bar commission's interpretation of the rules for admission of attorneys to his detriment and that his reliance resulted in undue hardship. This argument is predicated on a cover letter from Jim Henshaw, admissions clerk for the Nebraska State Bar Commission, that accompanied the application materials sent to Dundee. In relevant part, Henshaw's letter provides as follows:

> Under the Nebraska rules for admission of attorneys, an attorney admitted in another state may be admitted in Nebraska without examination if he or she has engaged in the practice of law in another state for five of the last seven years, or is a graduate of an ABA approved law school and was admitted in another state after an examination similar

to the examination administered in the State of Nebraska. . . . A copy of the Nebraska Rules is enclosed.

Dundee claims that he was duped by the cover letter into believing that he satisfied the requirements for admission, insofar as the letter does not mention the educational requirements incumbent on all applicants for admission. As a direct result of the putative misrepresentation of the Nebraska State Bar Commission, Dundee states that he suffered economic loss of $500 (the required application fee) as well as "undue harm" to his plans to relocate to Nebraska and open a law office.

This argument fails. As the letter states, a copy of the Nebraska Supreme Court Rules for Admission of Attorneys— which included rule 5—was enclosed for Dundee's review. As an attorney, Dundee should understand that the question of his admission would be governed by Supreme Court rules and not by a summary of those rules in a cover letter. We will not fault the state bar commission for Dundee's failure to read the rules that were provided for his review and were referenced in the very cover letter that he claims misled him.

As "lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts,'" *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S. Ct. 2004, 44 L. Ed. 2d 572 (1975), this state's interest in regulating the quality of those who purport to practice law is compelling, see *id*. The educational requirements of the Nebraska Supreme Court rules are not onerous in light of that compelling interest. Since Dundee does not satisfy these requirements, we affirm the decision of the state bar commission to deny his application for admission.

AFFIRMED.