Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/09/2018 08:14 AM CST

IN RE APPLICATION OF WILLIAM M. McDONNELL FOR
ADMISSION TO THE NEBRASKA STATE BAR.
___ N.W.2d ___

Filed March 9, 2018.    No. S-17-668.

1. **Rules of the Supreme Court: Attorneys at Law: Appeal and Error.**
   Under Neb. Ct. R. § 3-126 (rev. 2013), the Nebraska Supreme Court
   considers the appeal of an applicant from a final ruling of the Nebraska
   State Bar Commission de novo on the record made at the hearing before
   the commission.
2. **Rules of the Supreme Court: Attorneys at Law.** The Nebraska
   Supreme Court is vested with the sole power to admit persons to the
   practice of law in this state and to fix qualifications for admission to the
   Nebraska bar.
3. ____: ____. The Nebraska Supreme Court has the responsibility to adopt
   and implement systems to protect the public and to safeguard the justice
   system by assuring that those admitted to the bar are of such character
   and fitness as to be worthy of the trust and confidence such admis-
   sion implies.
4. **Attorneys at Law.** Lawyers are essential to the primary governmental
   function of administering justice and have historically been officers of
   the courts.
5. **Rules of the Supreme Court: Attorneys at Law.** The Nebraska
   Supreme Court has delegated administrative responsibility for bar
   admissions solely to the Nebraska State Bar Commission.
6. **Attorneys at Law: Proof.** The burden of demonstrating that an appli-
   cant is qualified for admission to the Nebraska State Bar is on the
   applicant.
7. **Rules of the Supreme Court: Attorneys at Law.** Bar admission rules
   are intended to weed out unqualified applicants, not to deny admission
   to a qualified applicant.

Original action. Application granted.

William M. McDonnell, pro se.

Douglas J. Peterson, Attorney General, and Timothy R. Ertz for Nebraska State Bar Commission.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

William M. McDonnell is a physician and health law specialist seeking admission to the Nebraska bar. He filed an application with the Nebraska State Bar Commission (Commission) seeking admission without examination as a Class 1-B applicant.[1] The Commission denied McDonnell's application on the basis that he failed to show he was "substantially engaged in the practice of law" for 3 of the 5 years preceding his application.[2] The Commission granted McDonnell's request for a hearing, reviewed the evidence, and again denied his application. McDonnell appeals.

Based on our de novo review of the record, we find McDonnell has carried his burden to establish that he was "substantially engaged in the practice of law" preceding his application, as required under § 3-119(B)(1). We therefore grant McDonnell's Class 1-B application.

## BACKGROUND

McDonnell graduated from the University of Virginia School of Law in 1987. After completing a judicial clerkship with the U.S. District Court for the Eastern District of Virginia in 1988, he was admitted to the Virginia State Bar by examination. In 1989, McDonnell was admitted by motion to the District of Columbia bar and began practicing at a private law firm in Washington, D.C. From 1989

---

[1] See Neb. Ct. R. § 3-119(B) (rev. 2016).

[2] See § 3-119(B)(1).

to 1994, McDonnell held various legal positions, including positions with the U.S. Securities and Exchange Commission and the U.S. Department of Treasury. In 1995, McDonnell commenced medical school at the University of Arkansas, and in 1999, he began employment as a physician. From 1999 through 2006, McDonnell worked as a resident physician, emergency department physician, and pediatric emergency medicine fellow physician.

In 2006, McDonnell began employment with the University of Utah, with dual appointments in the university's S.J. Quinney College of Law and the school of medicine. McDonnell worked as an adjunct professor of law as well as a pediatric emergency department physician. He held these positions through May 2014.

While employed at the University of Utah, McDonnell devoted 25 percent of his time and activities to his appointment at the college of law and 75 percent of his time to his appointment at the school of medicine. McDonnell's position as an attending physician required him to work between 18 and 21 hours each week in the emergency department at the university's primary children's medical center. McDonnell asserted that he worked an average of 60 hours per week in his dual position, and devoted 15 hours per week to working as a law professor.

As a law professor, McDonnell served as a course director, developed curricula for health law courses, conducted scholarly research, published writings on health law and policy topics, and provided continuing education lectures to medical professionals and attorneys. McDonnell taught one 3-credit-hour law school course for one semester each academic year. His relevant course work included preparing and presenting 104 class lectures of approximately 90 minutes in length. McDonnell attended faculty research meetings and met with student interest groups throughout the year. Additionally, he served as a faculty research supervisor for a law student conducting independent health law research.

In 2014, McDonnell relocated to Omaha, Nebraska, where he accepted a position as chief of the division of pediatric emergency medicine and medical director of the children's emergency department at the University of Nebraska Medical Center and Children's Hospital and Medical Center. In March 2016, McDonnell applied for admission to the Nebraska bar. McDonnell maintained an active membership in the Washington, D.C., bar at the time of his application.

After considering McDonnell's application for admission, the Commission issued a written letter on February 2, 2017, denying his request. The Commission determined that McDonnell's experience did not fulfill the requirement of being "'actively' and 'substantially' engag[ed] in the practice of law" for 3 of the 5 years preceding his application. McDonnell then requested a hearing before the Commission, which was held on April 14, 2017. At the hearing, McDonnell testified and provided exhibits, including his employment contract with the University of Utah and course materials he produced as a law professor. After the hearing, the Commission affirmed its denial of McDonnell's application for admission. McDonnell appealed to this court.

## ASSIGNMENT OF ERROR

McDonnell assigns, restated, that the Commission erred in denying his application seeking admission to the Nebraska bar.

## STANDARD OF REVIEW

[1] The Nebraska Supreme Court considers the appeal of an applicant from a final ruling of the Nebraska State Bar Commission de novo on the record made at the hearing before the Commission.[3]

---

[3] Neb. Ct. R. § 3-126 (rev. 2013); *In re Application of Collins*, 288 Neb. 519, 849 N.W.2d 131 (2014).

## ANALYSIS

[2,3] The Nebraska Supreme Court is vested with the sole power to admit persons to the practice of law in this state and to fix qualifications for admission to the Nebraska bar.[4] This court thus has the responsibility to adopt and implement systems to protect the public and to safeguard the justice system by assuring that those admitted to the bar are of such character and fitness as to be worthy of the trust and confidence such admission implies.[5] The bar admission practices of other states, and the policies behind those practices, do not govern admission practices in Nebraska.[6]

[4] Lawyers are essential to the primary governmental function of administering justice and have historically been officers of the courts.[7] Our decisions in disciplinary cases demonstrate the continued necessity of regulating the bar and ensuring that ethical rules for lawyers are maintained and enforced.[8] The practice of law in this state is a privilege.

[5,6] This court has delegated administrative responsibility for bar admissions solely to the Commission.[9] The burden of demonstrating that an applicant is qualified for admission is on the applicant.[10]

### Applicable Admission Rules

Section 3-119 sets forth three processes by which an attorney admitted to the bar of another state may apply for admission to the Nebraska bar without first undergoing the

---

[4] *In re Application of O'Siochain*, 287 Neb. 445, 842 N.W.2d 763 (2014). See Neb. Const. art. II, § 1, and art. V. §§ 1 and 25.

[5] *In re Appeal of Dundee*, 249 Neb. 807, 545 N.W.2d 756 (1996).

[6] *Id.*

[7] See *id.*

[8] See *In re Petition for Rule to Create Vol. State Bar Assn.*, 286 Neb. 1018, 841 N.W.2d 167 (2013).

[9] *In re Application of Collins, supra* note 3.

[10] Neb. Ct. R. § 3-125 (rev. 2013).

Nebraska bar examination. Section 3-119(B), applicable to "Class 1-B applicants," provides:

Class 1-B applicants who may be admitted to practice in Nebraska upon approval of a proper application are those:

(1) who have been licensed and are active and in good standing before the highest court of another state, territory, or district of the United States preceding application for admission to the bar of Nebraska and have actively and substantially engaged in the practice of law in another state, territory, or district of the United States for 3 of the 5 years immediately preceding application for admission; and

(2) who, at the time of their admission, had attained educational qualifications at least equal to those required at the time of application for admission by examination to the bar of Nebraska.

The plain language of § 3-119(B)(1) contains two "active" requirements: an active license requirement and an active practice of law requirement. The first clause of § 3-119(B)(1) requires that a Class 1-B applicant be licensed, active, and in good standing in another state's bar. Our rules define the "active and in good standing" requirement:

An applicant who is "active and in good standing" means an applicant who is admitted to the bar of another state and is not disbarred, is not under disciplinary suspension, has not resigned from the bar of such other state while under disciplinary suspension or while under disciplinary proceedings, or is not the subject of current or pending disciplinary proceedings, or who, having been disbarred or suspended, has been duly and fully reinstated.[11]

The second clause of § 3-119(B)(1) requires that a Class 1-B applicant have "actively and substantially engaged in the

---

[11] Neb. Ct. R. § 3-101(Q) (rev. 2016).

practice of law" for 3 of the 5 years preceding the application for admission. Our rules do not define the terms "actively and substantially engaged" as utilized in the active practice of law requirement of § 3-119(B)(1).

Section 3-101(P)(5) defines "practice of law" to include "[e]mployment as a teacher of law at a law school approved by the American Bar Association throughout the applicant's employment."

In addition to § 3-119, our admission rules include Neb. Ct. R. § 3-112 (rev. 2013), the "Essential eligibility requirements for practice of law." The additional requirements for the practice of law under § 3-112, as relevant here, include:

> (A) the ability to conduct oneself with a high degree of honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations;
>
> (B) the ability to conduct oneself diligently and reliably in fulfilling all obligations to clients, attorneys, courts, and others;
>
> . . . .
>
> (E) the ability to reason, analyze, and recall complex factual information and to integrate such information with complex legal theories;
>
> . . . .
>
> (J) the ability to conduct oneself professionally and in a manner that engenders respect for the law and the profession.

### McDonnell's Application Satisfies First Clause of § 3-119(B)(1)

The undisputed evidence before us indicates that at the time of his Nebraska application, McDonnell possessed an active law license in the District of Columbia and was in good standing. As a result, McDonnell meets the requirement of being licensed, active, and in good standing in another state, territory, or district of the United States.

The evidence also indicates that from March 2011 through May 2014, McDonnell was employed as a law professor at the S.J. Quinney College of Law, University of Utah. McDonnell completed regular and routine duties as a law professor, including lecturing, researching, and publishing.

At oral argument in this matter, the Commission agreed that McDonnell had shown he was "actively" engaged in the practice of law as a law professor in Utah. As a result, we conclude that McDonnell met the "practice of law" requirement, because he was employed as a law professor, and that his employer, the S.J. Quinney College of Law, is accredited by the American Bar Association.

Therefore, the only disputed issue in considering McDonnell's Class 1-B application is whether McDonnell was "substantially engaged in the practice of law" as a law professor at the S.J. Quinney College of Law.

### McDONNELL MEETS "[S]UBSTANTIALLY [E]NGAGED IN THE [P]RACTICE OF [L]AW" REQUIREMENT

The relevant time period for evaluating whether McDonnell was "substantially engaged in the practice of law" is from March 2011 through March 2016.

McDonnell argues his application satisfies the "substantially engaged in the practice of law" requirement, because the plain language of our rules does not require exclusive or full-time employment as a law professor. McDonnell further argues that under a reasonable interpretation of this court's admission rules, he meets the "substantially engaged" requirement, because he showed that he fulfilled his employment obligations by designing health law courses, presenting lectures, grading examinations, providing student mentorship, and producing law-related scholarly research. He also claims that he meets the "substantially engaged" requirement, because he worked as a law professor for 8 consecutive years, including 39 consecutive months during the relevant 5-year period.

McDonnell also asserts that the "substantial" requirement is best understood as excluding certain categories of applicants who clearly do not maintain an active practice. For example, McDonnell argues an applicant who is an emeritus or honorary professor, or a retired partner of a law office, would not satisfy the "substantially engaged" test, because the fact that an applicant holds a distinguished title is not an indication of that individual's competency immediately prior to the time of application.

The Commission concedes the rules do not require full-time employment but contends that the rules require "substantial" experience and that this requirement is designed to protect the public. The Commission does not attempt to define the parameters of the "substantial" experience requirement in quantitative terms and claims this court need not prescribe a fixed threshold to the word "substantially." The Commission does argue that the "substantially engaged" requirement is a means of assessing that an applicant has maintained the competency, skill, and fitness required to practice law[12] and should generally require that attorneys devote more than one-quarter of their employment activities to the practice of law. The Commission further argues that McDonnell's work as an adjunct law professor was not significant enough to meet the "substantially engaged" requirement.

We agree with the Commission that our analysis of whether McDonnell has met the "substantially engaged in the practice of law" requirement should focus on whether McDonnell possesses the competency, skill, and fitness required to practice law and whether he poses a threat to the public. In doing so, we consider our admission rules as a whole.

[7] This court has stated that it will not require a strict application of our admission rules if, in doing so, it would operate in such a manner as to deny admission to a qualified

---

[12] See, *Spencer v. Utah State Bar*, 293 P.3d 360 (Utah 2012); *In re Conner*, 181 Vt. 555, 917 A.2d 442 (2006).

applicant for a reason unrelated to the essential purpose of our rules.[13] The rules are intended to weed out unqualified applicants.[14]

Under § 3-119(B)(2), an applicant for admission must have, at the time of his or her admission, attained educational qualifications at least equal to those required at the time of application for admission by examination to the bar of Nebraska.

In *In re Appeal of Dundee*,[15] we held the education requirement contained in § 3-119(B)(2) meant that Class 1-B applicants must hold a juris doctor degree from a law school approved by the American Bar Association. We have recognized that requiring applicants to hold a juris doctor guarantees to Nebraska clients that Nebraska lawyers possess a certain minimum understanding of the law, because they have taken basic, core legal courses deemed "'minimally necessary to be a properly-trained attorney.'"[16] We have also found an applicant's proof of education is relevant to determining the applicant's abilities as an attorney.[17]

In this matter, the record shows that McDonnell obtained a juris doctor from the University of Virginia School of Law, a law school accredited by the American Bar Association. In addition, the Commission concedes that McDonnell satisfied the education requirement for bar admission.

---

[13] *In re Application of Budman*, 272 Neb. 829, 724 N.W.2d 819 (2006); *In re Application of Brown*, 270 Neb. 891, 708 N.W.2d 251 (2006); *In re Application of Gluckselig*, 269 Neb. 995, 697 N.W.2d 686 (2005).

[14] *In re Application of Collins-Bazant*, 254 Neb. 614, 578 N.W.2d 38 (1998).

[15] *In re Appeal of Dundee, supra* note 5.

[16] *Id.* at 811, 545 N.W.2d at 759 (quoting *Florida Bd. of Bar Examiners in re Hale*, 433 So. 2d 969 (Fla. 1983)). See, *In re Application of O'Siochain, supra* note 4; *In re Application of Budman, supra* note 13; *In re Application of Brown, supra* note 13; *In re Application of Collins-Bazant, supra* note 14.

[17] See, *In re Application of Brown, supra* note 13; *In re Application of Collins-Bazant, supra* note 14.

In addition to the education requirement, we have adopted the "Essential eligibility requirements for practice of law," which set out the standards for conduct and fitness against which all applicants are measured.[18] Also, the Legislature has enacted Neb. Rev. Stat. § 7-102(1) (Reissue 2012) which states that "[n]o person shall be admitted . . . unless it is shown to the satisfaction of the Supreme Court that such person is of good moral character." Our rules state that "[t]he purpose of character and fitness screening before admission to the practice of law in Nebraska is to ensure the protection of the public and to safeguard the justice system."[19]

McDonnell's application indicates that he is a person of good moral character and that he meets the essential eligibility requirements for the practice of law as set out in § 3-112. In addition, the Commission concedes that McDonnell satisfied the character and fitness requirement for bar admission, and at oral argument before this court, it did not contend that McDonnell would pose a threat to the public.

McDonnell also presented evidence to demonstrate his abilities as an attorney. He has been a licensed attorney since 1988, he practiced law until 1995, and he resumed the practice of law through his employment as a law professor in 2006. As a law professor, he taught a law school course, developed curricula for health law courses, conducted scholarly research, published writings on health law and policy topics, provided continuing education lectures to medical professionals and attorneys, attended faculty research meetings, met with student interest groups, and served as a faculty research supervisor for a law student conducting independent health law research.

Based upon McDonnell's education, character, fitness, and employment history, we find that he maintains the competency, skill, and fitness required to practice law. As a result,

---

[18] See § 3-112.

[19] Neb. Ct. R. § 3-116 (rev. 2013).

McDonnell carried his burden of proving that he was "substantially engaged" in his employment as a law professor for an appropriate amount of time preceding his application.

Our admission rules do not define the "substantially engaged in the practice of law" requirement, and we need not endorse a particular definition to decide this case. Rather, our admission rules dictate a qualitative analysis as opposed to a quantitative analysis. This decision should not be viewed as setting a threshold requirement for Class 1-B applications.

## CONCLUSION

Based upon our de novo review of the record, we conclude that McDonnell has carried his burden of proving that he met the application requirements for a Class 1-B applicant. As a result, McDonnell's application for admission to the Nebraska bar is granted.

APPLICATION GRANTED.

KELCH, J., not participating in the decision.
WRIGHT, J., not participating.